B. W. SHERRILL v. BENJAMIN B. BRANTLEY, Doing Business as ATLAS PRINTING COMPANY, Appellant.—66 S. W. (2d) 529.

Division One, December 22, 1933.

*Holland R. Polak* for appellant; *F. B. Hubachek, Charles Scott Kelly, F. E. Williams* and *Williams, Nelson & English* of counsel.

*Foristel, Mudd, Blair & Habenicht* for respondent.

HAYS, J.—This is an action against an employer, brought by plaintiff as assignee of an assigned account for commissions earned by an employee in the service of said employer. From a judgment for plaintiff rendered on the pleadings the defendant appealed. This court's appellate jurisdiction rests upon a constitutional question lodged in the case and involving the validity of a certain statutory provision as contained in the so-called Small Loan Laws.

The gist of the petition is that one Echols during October, 1929, as solicitor of printing for defendant upon a commission basis, earned sixty-five dollars, which became due and payable November 9, 1929; on November 2, 1929, Echols made an unconditional sale of the same to plaintiff by an assignment in writing executed for the consideration of sixty-two dollars in cash paid. Whereupon plaintiff immediately notified defendant of such assignment and thereafter on November 9, 1929, demanded of defendant sixty-five dollars, the amount of the account as assigned.

Defendant's answer was in the form of a general denial, to which there was added a special defense, in substance, that the transaction and assignment described in plaintiff's petition was, by the so-called Small Loan Act, "deemed to be a loan" within the meaning of the law, secured by such assignment, and that hence the transaction violated said act by charging an unlawful rate of interest, and was therefore void.

To this answer plaintiff demurred on the ground that said act, and particularly Section 16 thereof, as amended by the Act of 1929, upon which the special defense was based, is in violation of numerous provisions of the State and Federal Constitutions which are designated and among which is Section 28, Article IV of the State Constitution.

On the particular constitutional ground just stated the demurrer was sustained. The defendant, with leave, struck out of his answer the general denial, declined to plead further and suffered judgment as prayed to be entered for plaintiff on the pleadings.

The appellant bases his appeal upon the sole assigned error that the court erred in ruling and deciding that Section 16 of said act is violative of said constitutional provision which, so far as pertinent, reads as follows:—"No bill . . . shall contain more than one subject, which shall be clearly expressed in its title.".

As first enacted the law in question appears in Laws of 1927 at pages 252-258, and as subsequently amended it appears in Laws of

1929, page 201, now Section 5559 of the Revised Statutes of 1929. The respective titles of the two acts are substantially as follows:

(1927) "An Act to license and regulate the business of making small loans ($300 or less), secured or unsecured; . . . prescribing the rate of interest and charge therefor, and penalties for the violation thereof; *regulating the assignment of wages or salaries, . . . when given as security for any such loan.* . . ."

(1929) "An Act to repeal sections 10, 12, 13, 16, 17 and 19 of an act of the 54th general assembly of Missouri, 1927, entitled 'Finance, department of: *Providing for licensing and regulating of business of making small loans, prescribing rate of interest and charge therefor'* . . . and to enact in lieu thereof six new sections relating to the same subject, to be known as section 10, section 12, section 13, section 16, section 17 and section 19." (Italics ours.)

It seems appropriate to note in this immediate connection, and before discussion of title is undertaken, that the title prefacing the amendatory act operated to substitute Section 16 thereof in the original act so as to constitute it a part of the latter and in lieu of former Section 16 repealed. The title of the original act became thereby the title of the later law and the constitutionality of the substituted section is to be determined upon whether it comes properly within the purview of this title. [State ex rel. v. Gideon, 277 Mo. 356, 210 S. W. 358.]

That portion of said Section 16 material here reads as follows (italics ours):

"*Any sale, assignment or order for the payment of wages, salaries, commission or other compensation for services* (of $300 or less) *shall be deemed a loan within the provisions of this act,* to be secured by such assignment or order, and . . . such loan and such sale or assignment of, or order . . . shall be governed by and be subject to the provisions and limitations of this act. . . ."
the violation of which constitutes a misdemeanor under a subsequent section.

By way of introduction to appellant's principal ground of insistence upon the validity of said section, his counsel have in their brief and in oral arguments discussed in an interesting and enlightening manner the origin, development and the beneficial results of legislation of this type as enacted in this and other states of the Union. Upon this the appellant bases a contention that it was necessary to insure the carrying out of the Small Loan Act and to avoid evasion thereof, to embrace sales of wages to the extent they purport to be embraced in said Section 16. It seems sufficient to observe, in answer, that the necessity, if any, while pertinent to the question of the legislative *object* or purpose in the enactment, is not determinative of the

question of whether the statutory provision is embraced in the *subject* expressed in the title, since legislative enactments, however beneficent, must, with respect to title, fairly conform to the constitutional requirement.

The courts (generally speaking) in approaching a question raised upon the constitutionality of a statute will, as it is contended they should, assume (1) the existence of the facts and circumstances necessary to support the statute (State ex rel. Meals v. Hackmann, 217 S. W. 271, 273); and (2) the validity of the statute until the contrary is made to appear; resolving doubt, if any, in favor of validity if the legislation is germane and properly relates to the main subject. [State ex rel. Lorantos v. Terte, 324 Mo. 402, 405, 23 S. W. (2d) 120.]

But such assumption notwithstanding, "the courts cannot enlarge the scope of the title; they are invested with no dispensing power; the Constitution has made the title the conclusive index to the legislative intent as to what shall have operation; it is no answer to say that the title might have been made more comprehensive, if, in fact, the Legislature has not seen fit to make it so." [St. Louis v. Wortman, 213 Mo. 131, 140, 112 S. W. 520.]

That the controverted section is embraced in the title is strongly urged by the appellant, whose position in that regard, as expressed in the language of the brief, is this: "The legislative power to regulate a given business implies a power to control transactions not within the field to which regulation is intended primarily to apply, if the control of such transactions has reasonable tendency to increase the effectiveness of the regulation of the given business or is reasonably necessary or proper thereto, and such incidental regulations are germane to the main subject of legislation." Respondent concedes the Legislature's power to make reasonable regulations of sales of wages and salaries, and to include them in one and the same statute regulating loans, if the same be properly titled.

A brief examination will now be undertaken of the foremost authorities cited and relied upon by the appellant.

The first of these is State ex rel. v. Mead, 71 Mo. 266. Under a statute, enacted under a broad and inclusive title, to amend a designated section of a designated chapter of the statutes that was entitled "Concerning popular elections" the Governor, acting under the power of the amendatory statute to fill vacancies occurring or existing in county offices, made an appointment to the office of recorder of deeds of a county. The proceeding was to oust the defendant, who had been previously appointed to that office by the county court pursuant to the Act of 1855, entitled, "An act to establish Recorders' offices." The court held that there was an obvious connection and congruity between the idea expressed in the title and that of providing for filling, as was done, vacancies temporarily occurring in offices

filled, in the first instance, by the ordinary machinery of an election, and to be so filled again when the temporary exigency which occasions the temporary appointment has, with the cause in which it had its origin, ceased to exist.

In State v. Tallo, 308 Mo. 584, 274 S. W. 466, the statute interpreted prohibited the sale of ''near beer,'' of the appearance, odor and taste of beer, in places such as ''soft-drink'' stands, except in the original container and having the original name and label of the manufacturer on the container. The statute was entitled ''An act to provide for the exercise of the police powers of the state, by prohibiting the manufacture, possession, transportation, sale and disposition of intoxicating liquors; defining soft drink bars . . . and providing various methods of enforcing the law of the act.'' The question was upon whether the regulation of ''near beer'' in the particulars stated in the act, although not expressed in the title of the act, was within the same. The court held that such regulation was fairly a subject matter for the exercise of the police power and within the title of the act. It is a matter of common knowledge that real beer and near beer are the same, save only as to the ingredient alcohol contained in the former; they are completely congruous but for that one element.

State ex rel. Lorantos v. Terte, 324 Mo. 403, 23 S. W. (2d) 121, was decided upon a statute which had for its purpose the protection of the traveling public and which conferred upon the Public Service Commission the supervision and regulation of motor vehicles as common carriers upon the highways throughout the State and also provided for the enforcement of the provisions and punishment for the violation of the act. Such were the provisions of the title. Provision was made in the body of the act for the venue of suits that might be brought against such carriers in their wide field of operation. This court held that this provision was germane to the title, saying, *inter alia,* ''Provisions for the enforcement of the act and punishment for violation thereof are necessary to the main purpose announced in the title.'' The rationale of the decision is that the fixing of venue in actions looking to the enforcement of the act and punishment for violations thereof was germane to the title provision concerning ''enforcement'' and ''punishment.'' The correlation between enforcement and punishment and the venue of actions essential thereto is obvious.

Dunn v. State, 36 Ohio App. 170, 173 N. E. 22, is cited. That case rules that under the police power, a statutory provision similar to that involved in the instant case, is a proper legislative regulation as against a contention made that it was violative of the property and contract clauses of the Ohio and Federal Constitutions. No question

of the conformity of the statute with the title thereof was raised or decided.

In the second case cited of Dunn v. State, 122 Ohio St. 431, a statutory provision substantially the same as Section 16 here under consideration. was attacked on the ground it contravened the due process, liberty and property clauses of the State and Federal Constitutions, respectively, and was a legislative encroachment upon judicial powers. No issue was raised as to sales by assignment being within the title. This, however, was not an omission but is accounted for by the fact that the title did specifically include "the purchasing of salaries, wages or earnings." [Sec. 6346-11, Act of 1929, 113 Ohio Laws, 44.] It may be noted, in passing, also that the courts of Ohio hold that the provision of the Constitution of that state which declares that "no bill shall contain more than one subject, which shall be clearly expressed in its title" is *directory*, not mandatory. [State ex rel. Atty.-Gen. v. Covington, 29 Ohio St. 102, 1. c. 116.]

And next State v. Hill, 168 La. 762, 123 So. 317, in which the defendant was charged with and convicted of making several loans, ranging from ten to fifty dollars, while engaged in the business of making loans in sums of $300 or less, without having qualified as required by law. The statute there involved is similar to that now under review and declares that such sales should be deemed loans. The act was challenged on the ground that the title as well as the body was violative of a constitutional provision requiring that "every legislative act shall embrace but one *object*, and shall have a title indicative of such object." Regarding the contention that the business of making small loans is a separate and distinct object from the business of regulating the assignment of salaries and wages the court there, without any exposition of the law touching the constitutional requirement in respect of title, held that these subjects were directly related to each other, and properly included in the act, especially when such sales were made in connection with the business attempted to be regulated by such statute.

The respondent, on the other hand, contends, substantially, that the attempted regulation violates our constitutional provision set out above, because: (1) It prohibits, by conversion into loans all outright sales, made as such, of choses by assignment, including those (such as the one here), not of the nature, and having no purpose or incidents of a loan—and this without notice thereof being given in the title of any purpose relative to sales; (2) It is primary legislation in respect of sales, not a mere incident to the "regulation of the assignments of wages or salaries when given as security for loans;" (3) the title having descended to particulars and specified a certain class within the provisions of the act, to the exclusion of

others, as indicated in the clause last above quoted, it does not sufficiently indicate the purport of the body as to a sale *per se*.

Attention will now be directed to a few of the cases cited and specially stressed by the respondent.

State v. Fulks, 207 Mo. 26, 105 S. W. 733, was a prosecution for the giving away of a drink of whiskey, brought under the Local Option Act; an act which was entitled, "An act to provide for the preventing of the evils of intemperance by local option," by prohibiting sales of such liquor. It was held (l. c. 36) that the title of the act, which prohibits the *sale* of intoxicants, fails to give any notice that in the body of the act there will be found a provision constituting a *gift*—which had theretofore been a perfectly lawful act—a misdemeanor, and brings the act squarely in conflict with Section 28, Article 4 of the Constitution.

In State v. Great Western Coffee & Tea Company, 171 Mo. 634, 71 S. W. 1011, under an act entitled, "An act to prevent the use of unhealthy chemicals or substances in the preparation or manufacture of any article to be used or to be used in the preparation of food," the defendant was prosecuted for *selling* baking powder, which contained alum. The body of the act, among other things, declared unlawful the *sale* of any compound containing alum. The provision as to sale was held to be contrary to said constitutional provision because not fairly expressed in the title of the act.

In Hardware Co. v. Fisher, 269 Mo. 271, 190 S. W. 576, the act reviewed was entitled, "An act to provide for annual registration, supervision and filing of annual reports of certain corporations." A section in the body of the act provided, substantially, that persons exercising the franchise of any corporation after the license thereof had been forfeited should be held as partners and severally liable for the debts of such corporation. The court held that the individual liability so imposed was not sufficiently expressed in the title, citing (l. c. 278) many cognate cases.

We come now to a class of cases dealing with titles which descend to particulars and are ruled on that ground.

State v. Sloan, 258 Mo. 305, 167 S. W. 500, dealt with an act of which the title related to "herding cattle by nonresidents." The body of the act made it unlawful for any person (resident or nonresident) to drive cattle from the range in one county onto the range of another county in the State. The provision in the body was held to be broader than the subject expressed in the title. The rule in respect of generality and particularity in the terms of the title to a legislative act is applied and well stated therein, l. c. 313, in these words: "The purpose of a title is to serve as a clear and comprehensive indicator of the purport of the act. While it may be so general in its terms as to omit reference to or the expression of matters

germane to the principal features of the statute, if it sufficiently indicates the substantial purpose of the law, it will not be violative of the Constitution; but where a title descends to particulars and specifies a certain class included within the provisions of the act, to the exclusion of others, it does not sufficiently indicate the purport of the law, and is to that extent violative of the constitutional provision.''

In State v. Rawlings, 232 Mo. 544, 134 S. W. 530, the title of the act under consideration prohibited persons running order houses from delivering intoxicating liquors to persons having no license, and prohibited the storing for, or delivery to, another person intoxicating liquors in Local Option counties. A section of the act made it unlawful for any person, not a dramshop-keeper, to order for, store, or deliver liquor as agent of another person (not limited to Local Option counties). The court said (l. c. 557): "If the title to the act under consideration had been general, for example, if it had simply read 'An act concerning intoxicating liquors;' then it would have supported most any kind of a law affecting the purchase, sale, ordering or delivery of such liquors, but in this case, the title descends into details and attempts to point out a particular class of persons to which the law is intended to apply and the particular acts prohibited, and therefore cannot support a law which is leveled against a wholly different class of persons and prohibits acts not mentioned in such title.'' [See, also, State v. Crites, 277 Mo. 194, 209 S. W. 863; State ex rel. Niedermeyer v. Hackmann, 292 Mo. 27, 32, 237 S. W. 742.]

In the light of the foregoing authorities an examination, brief as may be, will now be made of the questioned statute. The subject of the title seems to be three-fold; the general subject looks to the regulation of the business of making "small loans,'' which is to be accomplished (1) by prescribing the rate of interest such loans may bear, and penalties for overcharge, and (2) by regulating the assignment of wages or salaries *"when given as security for loans."*

Had the bill been phrased in broad and inclusive terms so as to regulate all assignments of wages or salaries of $300 or less, provisions in the body of the act concerning sales by assignment would have been within the title and not counter to the constitutional provision here involved. But how widely such supposed expression differs from that actually employed. It is too plain for discussion that the clause "when given as security for loans" is conditional and by its very terms restrictive of the subject of transfers to those in the form of conditional assignments in the nature of security. The title does not in anywise foreshadow that an absolute transfer by assignment, for the purpose of the act and in furtherance of the loan business, will in the body, first, be converted into a loan and, next, regulated in the same way, irrespective of the good or bad faith of the parties

to the transaction. In that respect this provision in the title was, we think, misleading and the sales-by-assignment provision contained in Section 16 was not embraced in the title. On the contrary, it was expressly excluded therefrom by the restrictive clause heretofore referred to. [State ex rel. City of St. Louis v. Caulfield, 333 Mo. 270, 62 S. W. (2d) 818, l. c. 821, 823.]

Nor are we persuaded that the sales provision can be read into the title as an incident to the main subject, viz., the regulation of loans, not only because of the insurmountable obstacle just mentioned, but because there is no such congruity between sales and loans as would support such an implication. It is readily perceived that the object of present cash for the assignor and ultimate profit to the assignee may be accomplished either by outright transfers or by conditional transfers as mere security; profit in the form of interest in the one instance and in the form of discount in the other. But is that not an adventitious circumstance rather than a mark of congruity? We so regard it. But however regarded, it certainly establishes neither correlation nor unity between sales and loans, each of which is individualistic in all other respects and is in its own separate and distinct class; distinct and separate in the common understanding, in legal nomenclature and effect, in form and by nature and in their diverse characteristics and incidents. This seems too plain for elucidation.

The considerations foregoing impel the conclusion we have reached, namely, that said sales-by-assignment provision as contained in said Section 16 of the amendatory Act of 1929 aforesaid, now Section 5559 of the Revised Statutes of 1929, is violative of Section 28 of Article IV of the Constitution and therefore void. May not the suggestion be ventured that if, as intimated by appellant's counsel, this result may endanger the successful operation of the remainder of said act, remedy is perhaps available and might be prompt, since it rests with the Legislature, which is now in session.

The judgment of the circuit court is affirmed All concur.