STATE OF MISSOURI upon the information of ROY MCKITTRICK, Attorney General, Relator, v. ANDREW J. MURPHY, SR., EDWARD C. CROW and HARRY P. DRISLER, Members of the Unemployment Compensation Commission of Missouri, and THE UNEMPLOYMENT COMPENSATION COMMISSION OF MISSOURI.—148 S. W. (2d) 527.

Court en Banc, February 28, 1941.

*Roy McKittrick*, Attorney General, and *J. E. Taylor*, Assistant Attorney General, for relator.

*Edward C. Crow* and *Harry G. Waltner, Jr.,* for respondents.

HAYS, J.—Original action in *quo warranto* against the Unemployment Compensation Commission of Missouri, hereinafter referred to as the commission, and the individual members thereof. ■ To the information, filed by the Attorney General *ex officio*, the respondents have jointly demurred upon the ground, among others, that it does not state facts sufficient to entitle relator to the relief sought. For the purpose of ruling the demurrer, all of the facts well pleaded in the information must be taken as true. Hence we summarize the material allegations of that pleading.

■ The commission is a subordinate branch of the executive department of the State government. As such it is charged with the administration of the Unemployment Compensation Act of 1937 and acts amendatory thereto. [Laws of Mo., 1937, p. 574 et seq.; Laws of Mo., 1939, p. 887 et seq.]

Immediately after the original act went into effect, the commission set up its central office at Jefferson City, Missouri. This was at first located in the State Capitol Building, but was later removed to a building which had formerly been used as a shoe factory. From time to time the commission entered into negotiations with the Jefferson City Chamber of Commerce and with the municipal government of that city, looking toward the erection of a suitable fireproof building for the commission's permanent headquarters. It will be unnecessary to trace in detail the course of these negotiations. They culminated

in the authorization by the city of a $200,000 bond issue, the proceeds of which might be used to erect the building. In March, 1940, the city made a formal proposal to the commission to the effect that it would erect a fireproof building with 40,000 sq. ft. of floor space satisfactory to the commission, and would lease the same to the commission at an annual rental of one dollar for a term of two years, "with the privilege of renewal for a like period, and subject to cancellation by the commission on thirty days' notice after one year's occupancy under the original lease or renewal thereof."

For a considerable time respondents, in interviews, news releases and otherwise, have asserted the right to remove their headquarters from Jefferson City. They invited other cities to submit proposals for the erection and leasing of office buildings and proposals were actually received from Carthage, Sedalia, Hannibal, Columbia, Moberly, and elsewhere. Thereafter in June, 1940, the commission passed a resolution declaring that "the five most desirable propositions have been submitted by the cities of Carthage, Sedalia, Hannibal, Jefferson City and Moberly." It also declared that "the proposal made by Jefferson City, Missouri, is unsatisfactory for the reason that proposals submitted by several other cities are, in the opinion of the commission, more desirable and advantageous to the agency." On the same day the commission passed another resolution accepting the proposal made by Sedalia. In that proposal the city of Sedalia offered to construct and furnish a modern fireproof office building with adequate space and to lease the same to the commission for ten years at an annual rental of one dollar, with the privilege of cancellation after the end of the first year.

The relator contends that in the actions above set out the respondents have usurped a franchise not given to them by law, to-wit: the power to remove the headquarters of the commission from Jefferson City to some other point in the State. This action is alleged to be outside of and beyond the powers conferred upon the commission by Sec. 4a of the Unemployment Compensation Act of 1939, supra, p. 926. It is also alleged by the relator that if the last-cited statutory section be construed so as to give the commission the power it claims, it would be, as so construed, unconstitutional for the following reasons: (1) The Constitution, so relator claims, requires the offices of all branches of the executive department, of which respondent commission is said to be one, to be located at the seat of government in Jefferson City, Cf. Const. of Mo., Art. IV, Sec. 56, Art. V, Sec. 1; (2) Relator claims that if the act be so construed, its provisions would not only be broader than the title of the original bill, as passed by the Legislature, but would directly contravene the title, and hence that the portion of the statute construed to grant such power would be void because of the violation of Sec. 28, Art. IV of the Constitution.

■ Respondents contend that the information does not state facts sufficient to entitle relator to any relief available in a *quo warranto* proceeding. Assuming all of the facts in the information to be true and assuming, for the purpose of argument only, that the commission erred in construing the Act of 1939 as authorizing it to remove its headquarters from Jefferson City, respondents contend that *quo warranto* is not a proper remedy to correct this error of construction.

The jurisdiction of this court to hear and determine original proceedings in the nature of *quo warranto* is expressly conferred upon us by Sec. 3 of Art. VI of the Constitution. The fundamental law does not, however, define the term *"quo warranto."* Those words must be taken to have been used at their recognized common law significance as that was understood in 1875 when the Constitution was adopted. The nature and history of the writ of *quo warranto* were discussed in the case of State ex rel. v. Lawrence, 38 Mo. 535. Originally the proceeding was authorized by the statute of Gloucester, 6 Edw. I, ch. 1, amended 18 Edw. I, st. 2. Proceedings founded upon this act were of a *quasi*-criminal nature and had for their purpose the punishment of those who, without authority, attempted to exercise a franchise which could be lawfully granted only by the Crown. The writ, like all other original writs, issued out of chancery but was returnable to the King's Bench, and hence the action was at common law and not in equity. The original form of the proceeding proved so cumbersome that at an early date it was superseded by an information in the nature of *quo warranto* filed by the Attorney General *ex officio*. The right to file such information, with leave of court, was extended in certain instances to private litigants by the statute, 9 Ann. ch. 20. In so far as the lower courts of Missouri are concerned *quo warranto* procedure has been regulated for many years by statutes which now appear as Art. 13, Ch. 8, R. S. Mo. 1939. These statutes are, to some extent, modeled upon the Statute of Anne, last cited. While our jurisdiction is derived from the Constitution and hence cannot be modified by statute, the terms of these various statutory enactments may be looked to for the purpose of ascertaining what the Constitutional Convention meant by the term *"quo warranto."*

■ The various procedural changes we have outlined do not affect the basic purposes for which the writ was originally designed. These purposes are expressed by Blackstone in the following language:

"A writ of *quo warranto* is in the nature of a writ of right for the king, against him who claims or usurps any office, franchise, or liberty, to inquire by what authority he supports his claim, in order to determine the right." [Bla. Com., Chases Ed. 752.]

It is true that in the case of a private corporation *quo warranto* will lie where the company has abused or failed for a long time to exercise its franchise. [State ex rel. v. Road Co., 37 Mo. App. 496; Cleaver v. Commonwealth, 34 Pa. 283.] It is also true that it will lie

against a county officer who has been legally elected or appointed to office in the first instance but has forfeited his office by misconduct. [State ex inf. v. Graves, 346 Mo. 990, 144 S. W. (2d) 91; State ex inf. v. Wymore, 345 Mo. 169, 132 S. W. (2d) 979.] But, in both of these instances the theory on which the writ is issued is that at the time of the filing of the information the franchise has ceased to exist and become forfeited because of the misconduct of its holder. The officer who violates his oath of office by corruption, wilful misconduct or neglect of official duty automatically loses the right to office and becomes a mere interloper. The corporation which held its power and privileges as a trust from the sovereign immediately loses its franchise when it violates the terms of such trust. In either case the judgment in *quo warranto* does not try the question of forfeiture. It merely recognizes judicially *fait accompli* and ousts the wrongdoer from enjoying the privileges of a franchise which he has ceased to possess.

The writ of *quo warranto* is not a substitute for mandamus or injunction nor for an appeal or writ of error. It is not to be used to prevent an improper exercise of power lawfully possessed. Its purpose is solely to prevent an officer or a corporation or persons purporting to act as such from usurping a power which they do not have. Thus it is stated in High on Extraordinary Legal Remedies (3 Ed.), p. 557:

"In considering the nature and purpose of the information in the nature of a *quo warranto*, it is to be premised that it does not . . . command the performance of his official functions by any officer to whom it may run, since it is not directed to the officer as such, but always to the person holding the office or exercising the franchise, and then not for the purpose of dictating or prescribing his official duties, but only to ascertain whether he is rightfully entitled to exercise the functions claimed." [See also State ex inf. v. Thatcher, 340 Mo. 865, 102 S. W. (2d) 937; State ex rel. v. Fleming, 158 Mo. 558, 59 S. W. 118.]

What is meant by the term "franchise" as used in connection with the writ of *quo warranto*? A franchise has been defined as "A special privilege conferred by government on individuals, and which does not belong to the citizens of the country generally by common right;" also "A royal privilege or branch of the king's prerogative subsisting in the hands of a subject." [Bouvier's Law Dictionary, citing 2 Bla. Com. 37; Bank of Augusta v. Earle, 13 Pet. 595.] The term is applied by the courts to the powers granted by law to public officers and agencies of government. [State ex rel. Allen v. Dawson, 284 Mo. 427, 224 S. W. 824; Cochran v. McCleary, 22 Iowa, 75.]

It must be borne in mind that a corporation or an officer or governmental agency may possess many diverse and distinct powers. An officer may exercise certain functions under powers lawfully conferred

on him by the Constitution or statute, and may at the same time attempt to exercise other functions which lie beyond the scope of the powers conferred on him by law. In this case he may be ousted by quo warranto from the exercise of usurped powers although still allowed to retain his office and to perform the functions with which he is lawfully intrusted. [Cf. Ann. 14 Harv. Law Rev. 459.]

The distinction which we have sought to draw between the improper exercise of existing power on the one hand and the usurpation of non-existing power on the other is made plain by two of our decisions: State ex rel. v. Dawson, supra, and State ex inf. v. Thatcher, supra.

In the Dawson case a statute had attempted to confer upon the judges of the Circuit Court of Buchanan County the power to determine how many deputies should be appointed by county officers and to fix the salaries of the deputies so appointed. In so far as the statute applied to officers having no connection with the court, as, for example, the treasurer, assessor and collector, it was clearly in violation of the provisions of the Constitution relating to the separation of governmental powers. [Const. of Mo., Art. III, Sec. 1.] The circuit judges proceeded to exercise the power which this act purported to confer upon them. The county court then sought to enjoin them from so acting. We held that injunction was not a proper remedy and, in so holding, we pointed out that quo warranto would lie. The decision was undoubtedly sound because the judges of the circuit court were usurping a power which they did not and could not possess.

In the Thatcher case the county court of St. Louis County had proceeded, as required by law, to approve the county budget for 1937. The budget, so approved, was alleged to have been prepared and presented to the court by the presiding judge as budget officer. It was alleged that the preparation of the budget should have been made by a board consisting of all of the county judges, the clerk, the assessor, the collector and the treasurer. It was also claimed in the information that the county court, which had undoubted authority to issue so-called anticipation notes against the county revenue, had exceeded the statutory limit as to the amount of said notes and that the court had also exceeded certain constitutionally fixed limits in the incurrence of county indebtedness. We held that these alleged errors could not be reached by a proceeding in quo warranto. In adopting a budget and in managing the fiscal affairs of the county the court was exercising functions intrusted to it by the Constitution and statutes. If, in the exercise of these existing powers, it committed error in fact or in law, such error could not constitute an usurpation to be dealt with in a quo warranto proceeding.

In a case of quo warranto, if the Constitution or a statute in conformity therewith intrusts an officer with the performance of a certain governmental function and he proceeds to perform that func-

tion in a manner contrary to law, there is no usurpation and *quo warranto* will not lie, but where the officer steps entirely outside the scope of his authority to exercise a function which neither the Constitution nor the statute has intrusted to him, the remedy by *quo warranto* is available.

Having thus drawn in a general way the line between usurpation of power not possessed and the mere illegal and improper · use of existing power, we turn to the more difficult task of locating the present case on one side or the other of that line. What is it that the respondent commission is said to have done? It is charged to have taken preliminary steps to locate its headquarters in a city other than the State capital. But, what are the precise acts involved in such a change in location? They include the leasing of an office building in Sedalia, requiring certain employees of the department to do their work in that building, holding meetings of the commission there and placing certain files and records in the building, so leased.

Relator does not contend that respondents are without power to conduct a portion of their official duties in cities of Missouri other than Jefferson City, nor that respondents lack power to lease office space and maintain employees in such other cities. Relator does contend that respondents have no power to establish the central office of the Commission outside of Jefferson City. The respondents, at page 9 of their brief, well state the question as follows: "The object of this *quo warranto* proceeding is to have this court decide whether or not respondents must locate the central office of the Unemployment Compensation Commission at Jefferson City."

Respondents concede that they could be required by statute to maintain the central office at Jefferson City, but say that the present controlling statute does not unconditionally require them to do so.

In 1939 the General Assembly amended the Unemployment Compensation Law. [Laws of Mo. 1939, page 892 et seq.] Section 4a, page 926 of that Act, is as follows: "The office of the Unemployment Compensation Commission shall be maintained in the City of Jefferson, *provided,* that within a reasonable time after the passage of this Act there shall be satisfactory arrangements made for the housing of the Commission at a location in said City and in a modern fireproof building appropriate for that purpose, and at a rental to be paid by the Commission, all satisfactory to the Commission and the Federal Social Security Board."

Ordinarily the word "provided" introduces a condition or exception and is often synonymous with "if," but sometimes, even in statutes, it has only the meaning of the conjunction "and." [50 C. J., pages 830, 831; Doneghy v. Robinson (Mo.), 210 S. W. l. c. 659; State ex rel. v. Mooneyham, 212 Mo. App. 573, 253 S. W. 1098.]

A fair statement of respondents' position is that Section 4a should be construed to read as follows: "The office . . . shall be main-

tained in the City of Jefferson, *if* within a reasonable time . . . there shall be satisfactory arrangements made," etc.

However, the title to the Act of 1939 contains the following language: "and providing for the maintenance of the office of the Unemployment Compensation Commission of Missouri in the City of Jefferson." Section 28, of Article IV of our Constitution requires that the subject of a legislative act shall be clearly expressed in the title. The purpose of this requirement is to prevent surprise or fraud upon the legislators by barring from the body of a bill. everything not indicated by the title. [Williams v. Railroad, 233 Mo. 666, 136 S. W. 304.] If the title is restrictive, the Act must also be restrictive. [Hunt v. Armour & Co., 345 Mo. 677, 136 S. W. (2d) 312; Sherrill v. Brantley, 334 Mo. 497, 66 S. W. (2d) 529.]

The title to the Act of 1939 seems restrictive in that, by stating that the Act provides for the maintenance of the office *in Jefferson City,* it excludes the idea that the office can be maintained in some other city. If so, the construction contended for by respondents would render the proviso to Section 4a void because outside the title, but that would not make the first part of the section void.

We think a proper construction of the section, considered with the title, is: "The office . . . shall be maintained in the City of Jefferson, *and,* within a reasonable time . . . there shall be satisfactory arrangements made," etc. This would give validity to the proviso, as it is our duty to do, if possible. But, whether the section be construed as last indicated or the proviso be held void, we are not persuaded that the respondents have power to maintain the central office of the Commission outside the City of Jefferson.

Rather the question is not whether the respondents are attempting to misuse a power possessed, but whether they are attempting to exercise a power which has not been given them. That question is a proper subject for consideration in *quo warranto.* We rule the question upon the latter alternative and hold that the respondents have no power to maintain the central office of the Commission outside the City of Jefferson.

We conclude the demurrer should be overruled. The respondents should be and they are hereby ousted from locating or attempting to locate or maintain the central office of the Commission outside the City of Jefferson. And for this usurpation of authority in the premises they are fined one dollar and costs of this proceeding. It is so ordered. All concur.