STATE OF MISSOURI, at the Information of STANLEY WALLACH, Prosecuting Attorney of St. Louis County, Missouri, v. BERNARD V. BECKMAN, Appellant.—No. 39223.—185 S. W. (2d) 810.

Division One, March 5, 1945.

*Louis L. Hicks* for appellant.

1016

*Stanley Wallach,* Prosecuting Attorney of St. Louis County, and *Roy McKittrick,* Attorney General, for respondent.

1018

DALTON, C.—Information in the nature of a quo warranto, instituted in the Circuit Court of St. Louis County, to oust respondent from the office of Justice of the Peace of Clayton Township, St. Louis County. The trial court entered a judgment of ouster and respondent has appealed. We shall refer to the parties as relator and respondent.

The facts are not in dispute. On the 8th day of November 1938, respondent was elected a Justice of the Peace for the City of University City in Clayton Township, St. Louis County. A certificate of election and a commission for said office was duly issued and respondent entered upon the duties of said office. Subsequent to that date, no commission was issued to any one else for the office of Justice of the Peace for the City of University City, Clayton Township. It was admitted that the records of the Board of Election Commissioners for St. Louis County would show that in the general election in November 1942, "the office of Justice of the Peace for the City of University City, Clayton Township, did not appear on the printed ballot"; that "there were six votes written in (in University City) for Bernard V. Beckman, Justice of the Peace for the City of University City, Clayton Township"; "that there were no other names written in for that office": that, at said general election the names of Taylor W. Strubinger and John Wesley Ward, Jr., duly appeared on the ballot as nominees of the Republican party for the offices of Justice of the Peace for Clayton Township; and that they were duly elected Justices of the Peace for said township and duly commissioned.

It was further admitted that, at the time the information was filed herein, respondent was "holding himself out as being a justice of the peace"; that there was no other justice of the peace holding office in the City of University City, Clayton Township; and that, after the

filing of the information, Roy McKittrick, Attorney General of the State of Missouri, filed over forty tax suits in respondent's court, many of which suits were pending at the time of the trial. Respondent admitted that, up to the time of the hearing of the cause, he had tried civil cases, including landlord and tenant and unlawful detainer cases; and that he had performed marriages and "taken affidavits from people."

According to the 1940 census, Clayton Township, a municipal township of St. Louis County, had a population of 61,309; the City of University City, an incorporated municipality in said township, had a population of 33,203; and St. Louis County had a population of not less than 200,000 nor more than 400,000 inhabitants.

Relator proceeded on the theory (1) that the statute, under which respondent was elected Justice of the Peace for the City of University City in Clayton Township in 1938, was a general statute, to wit, what is now Sec. 2522, R. S. 1939, providing that "Each municipal township, except as otherwise provided by law, shall be entitled to two justices of the peace, to be elected and commissioned in the manner hereinafter provided; but in case there shall be in any such township an incorporated town or city having a population of over two thousand inhabitants, and less than one hundred thousand inhabitants, said town or city shall be entitled to one additional justice of the peace, who shall be a resident of such town or city . . . . "; (2) that said section was applicable to St. Louis County at the time of respondent's election in 1938; (3) that, thereafter, a new statute (Laws 1939, p. 340), applicable to St. Louis County, was passed and approved and no provision was made for the continuance of respondent's office in the City of University City; and (4) that respondent was not a candidate or nominee for Justice of the Peace of Clayton Township or for any office at the general election in 1942. Relator, therefore, charged that respondent, without any legal authority or right whatsoever, had "at all times since January 1, 1943, usurped, held, used, intruded himself into and unlawfully exercised the office, functions and franchises of justice of the peace in Clayton Township", and had "unlawfully and without right claimed, received and enjoyed the rights, fees and emoluments belonging and appertaining to said office."

Respondent proceeded upon the theory that, at the general election in November 1938, he was elected Justice of the Peace for the City of University City in Clayton Township, for a four year term, and until his successor was elected and qualified; that at the general election held on November 3, 1942, the Board of Election Commissioners of St. Louis County unlawfully refused to include in the printed ballot "the designation of Justice of the Peace for the City of University City in Clayton Township"; that six votes were written in for him (respondent) for that office; that said votes were the only votes cast for said office; that "respondent was duly elected"; but that the

Election Commissioners had refused to issue a certificate of election on the ground that no election for the office was held. Respondent claimed that, if there was no election, he was entitled to hold until a successor was elected. In other words, he based his claim, that he was a Justice of the Peace for the City of University City in Clayton Township, on two theories, to wit, (1) that it was mandatory for him to hold over until he had a successor; and (2) that if his name was not on the printed ballot, but was written in, "there was an election." Respondent further proceeded on the theory that Art. 8, Chap. 10, R. S. 1939, and particularly Sec. 2752, R. S. 1939 (Laws 1939, p. 340) was enacted in violation of Sec. 28, Art. IV of the Constitution of Missouri providing that "no bill (except general appropriation bills . . . ) shall contain more than one subject, which shall be clearly expressed in its title."

Respondent (as appellant) now contends that the circuit court had no jurisdiction to hear and determine this cause, because the prosecuting attorney of St. Louis County had "no authority to file the information" and had no special "interest in the subject of the prosecution." Respondent's theory is that this is a civil action (State ex inf. Major v. Arkansas Lumber Co., 260 Mo. 212, 279, 169 S. W. 145); that relator must have "an interest in the subject matter peculiar to himself as distinguished from that of the general public" (State ex rel. Pickett v. Cairns, 305 Mo. 333, 338, 265 S. W. 527); and that under Sec. 12991, R. S. 1939 "all the duties in civil matters that have heretofore been required by law of the prosecuting attorney" of St. Louis County must now be discharged by the county counselor. Respondent further relies on Sec. 1782, R. S. 1939, which, under certain circumstances, authorizes quo warranto "at the relation of any person desiring to prosecute the same."

While quo warranto is regarded as a civil action, it does not follow that the prosecuting attorney of St. Louis County could not properly institute this proceeding. The information was not filed by the prosecuting attorney at the relation of a private individual, but ex-officio (by virtue of his office), and it contains no allegation of any peculiar interest in relator, other than by reason of his office.

Section 12991, supra, relied on by respondent, authorizes the county counselor (in counties of 100,000 inhabitants or over) to "commence, prosecute or defend, as the case may require, all civil suits or actions in which the county is interested, (to) represent the county generally in all matters of civil law, . . . and . . . (to) perform all duties in civil matters that have heretofore been required by law of the prosecuting attorney of such counties." Sec. 12992, R. S. 1939, provides that "upon and after the appointment of such county counselor, the prosecuting attorney of such counties shall *not be required* to represent said counties in any civil action or business." (Italics ours.) See, also, Sec. 12993a, Laws 1941, p. 318.

The office of Justice of the Peace, is an "office under this state." Sec. 12, Art. 6, Constitution of Missouri, 1875; Ramsey v. Huck, 267 Mo. 333, 184 S. W. 966, 968. The office is one to which the officer must be elected or appointed under the authority of the laws of the state and which requires the performance of duties prescribed by the laws of the state. Accordingly, the present action to try the title to the office in question was not one in which the county alone was interested. It was brought as a state action. No allegation of special or peculiar interest was required. Sec. 12991, supra, in nowise limited the right or authority of the prosecuting attorney, ex-officio, to exhibit or prosecute the action.

" 'The title to all offices being derived from the State, and it having an inherent right at any time to call upon one who assumes to exercise the functions of a public office, to show his right to do so, it is evident that no specific allegations of right or title on the part of the State can be necessary; . . . In all these cases, the State seeks to recover, not so much on the strength of its own title as upon the weakness or defects in the respondent's title, which it calls upon him to establish.' Mechem's Pub. Off., sec. 491. 'And when the information is filed in its name by the attorney-general (or other similar officer) it will be presumed that he does so in his official capacity and for the purpose of vindicating the rights of the State.' Ib. sec. 490. Not so, however, when the proceedings are begun at the instance of some private individual; in such case his interest in the question must be made to appear." State ex inf. Deering v. Berkeley, 140 Mo. 184, 41 S. W. 732; State ex rel. Boyd v. Rose, 84 Mo. 198; State ex rel. Kimbrell v. People's Ice, Storage & Fuel Co., 246 Mo. 168, 151 S. W. 101; See, also, Sec. 12942, R. S. 1939. We, therefore, hold that the circuit court had jurisdiction to hear and determine the cause.

Respondent next contends that the judgment of ouster is erroneous, because in 1938 he was elected Justice of the Peace for the City of University City, Clayton Township, pursuant to Sec. 2136, R. S. 1929, now Sec. 2522, R. S. 1939; that said section has not been repealed; that University City had a population in excess of 2000 inhabitants and was entitled to an additional justice of the peace; that pursuant to his said election he was duly commissioned a justice of the peace for the City of University City, Clayton Township, on November 23, 1938, by the county court of St. Louis County for a term of four years and "until his successor in said office shall be duly appointed and qualified"; and that no successor has been elected or appointed and qualified.

Respondent says that the trial court assumed that Sec. 2366, supra (Laws 1939, p. 340) (later Sec. 2752, R. S. 1939) and Sec. 2752, Laws 1941, p. 417, were applicable to the office held by him (respondent). Respondent says they are not applicable (1) because both acts are

unconstitutional as violations of Sec. 28, Art. 4, of the Constitution of Missouri; (2) because neither act applied to Clayton Township. which had a population of 61,300 in 1940 (less than 75,000 inhabitants); and (3) because the Act of 1941 (Laws of 1941, p. 417) was repealed on July 16, 1943 (and prior to the time the judgment of ouster was entered on May 15, 1944) (See, Laws 1943, p. 624). Respondent later concedes that whether or not he ''should be ousted . . . . is to be determined exclusively upon the validity of the 1939 act.''

As stated, Sec. 2522, supra, is a general section and expressly provides, ''except as otherwise provided by law.'' After respondent was elected to the office he now claims, the legislature undertook to repeal Art. 8, Chap. 10 (Sec. 2366 et seq.), R. S. 1929, dealing with justices in townships containing 75,000 and not over 150,000 inhabitants and undertook to enact a new article 8, particularly relating to justices of the peace in counties having a population of not less than 200,000 nor more than 400,000 inhabitants. Laws 1939, p. 340. Sec. 2366 of this new article 8 of Chap. 10 (Laws 1939, p. 340), now Sec. 2752, R. S. 1939, expressly provided, as follows: ''In all counties which now have or may hereafter have a population of not less than two hundred thousand (200,000) nor more than four hundred thousand (400,000) inhabitants according to the last United States decennial census, there shall be elected every four years two justices of the peace for. each township therein . . . Provided, that the two justices elected at large in each township at the general election of 1938 shall fill the offices herein provided in such counties, subject to the provisions of this article, until January 1st, 1943 *and beginning with the general election of 1942 no justice of the peace shall be elected except as herein provided,* and provided further, from and after the effective date of this article and until January 1st, 1943, in any such county, *all other duly elected justices of the peace now in office in such county may be paid by the county court* such salary, clerk hire, and other expense as the county court may deem necessary and proper but not to exceed one hundred dollars ($100) per month total for each justice; and provided further, that nothing herein contained shall be construed to require any election, general or special until said general election of 1942.'' (Italics ours.) See, also,. Laws 1941, p. 417, amending this section, but retaining the words ''and beginning with the ▆▆▆ general election of 1942 no justice of the peace shall be elected except as herein provided.'' This section was later repealed and new sections enacted (Laws 1943, p. 624) so that Sec. 2752 (Laws 1943, p. 624) expressly provides that ''. . . there shall be no justices of the peace in said counties other than those herein designated, and the tenure of office of any other justice of the peace in said counties is herewith terminated, and the office abolished.''

▆▆▆ Did the bill (Committee Substitute for House Bill No. 359, Laws 1939, p. 340) purporting to repeal Art. 8 of Chapter 10, R. S.

1929 and to enact a new article 8, violate Sec. 28, Art. IV of the Constitution of Missouri, providing that "no bill . . . shall contain more than one subject, which shall be clearly expressed in the title." The bill was entitled, "An Act to repeal Article 8 of Chapter 10, Revised Statutes of Missouri, 1929, *relating to Justices of the Peace* and to enact in lieu thereof *a new article* to be known as Article 8 *relating to the same subject matter* and providing that the General Assembly hereby determines this Act to be a Revision Act within the meaning of Section 41, Article IV of the Constitution of Missouri." (Italics ours.) At that time Chapter 10, R. S. 1929 was entitled, "Courts—not of record.—Justices Courts—organizations and procedure." Art. 8 of Chapter 10, R. S. 1929, was entitled "Justices in townships containing 75,000 and not over 150,000 inhabitants." The title of this act (Art. 8) as originally passed (Laws 1915, p. 324) was as follows: "An Act entitled justice of the peace in townships containing seventy-five thousand inhabitants and not over one hundred and fifty thousand inhabitants."

Respondent relies upon the case of Forgrave v. Buchanan County, 282 Mo. 599, 222 S. W. 755, 757, wherein it was held that the Act of 1915, supra (Laws 1915, p. 324) included "provisions generally for justice courts, their organization and procedure in townships containing 75,000 and not over 150,000 inhabitants"; that all of the provisions in the act related to that one subject; that there were no provisions in the act "not germane and naturally connected with that subject, as expressed in the title"; and that the subject was "clearly expressed in the title." Respondent further relies upon Sherrill v. Brantley, 334 Mo. 497, 66 S. W. (2d) 529 and State ex rel. Mueller Baking Co. v. Calvird (en banc), 338 Mo. 601, 92 S. W. (2d) 184, as holding that "when an existing act is *amended* by reference to the section or article number by which it appears in the revised statutes, the title of the original act becomes the title to the amendatory act." (Italics ours.) •

In Sherrill v. Brantley, supra, a prior act of the legislature, having a title which limited the general subject of that act to particular matters, had been *amended* by a new act repealing particular sections of the former act (which former act was referred to by its general subject) and new sections in lieu of the repealed sections were enacted. It was held that the title of the original act became the title of the *amended* act and that matters outside of the title of the original act were excluded by Sec. 28, Art. 4 of the state constitution.

In State ex rel. Mueller Baking Co. v. Calvird, supra, the new act was entitled, "An act to repeal article 1, chapter 98, Revised Statutes 1909, entitled 'Pools, trusts, conspiracies and discriminations,' and to enact a new article in lieu thereof, to be known as article 1, chapter 98, and entitled 'Pools, trusts, conspiracies and discriminations.' Laws Mo. 1913, p. 549." While the title of the original article was

exactly the same as the new article enacted, and while the entire original article was repealed and an entire new article with the new title was enacted, the court applied the rule in Sherrill v. Brantley, supra, to-wit, that "the title of the original act became the title of the later law," and then ruled the case on the theory the content of a particular section of the new article was within the purview of the title of the original article which had been wholly repealed. We think that the rule was erroneously applied, since there was no amendment of the original article by the repeal of certain sections of the former act and the enacting of new sections in lieu thereof to become a part of the original article, and, further, that the application of the rule was wholly unnecessary to the decision in the case, since the title of the new act was the same as the title of the act which was repealed, the same result would have been reached by determining whether the content of the particular section of the new article was within the purview of the new title of the new act.

It will be noted that the Act of 1939, supra (Laws 1939, p. 340) does not amend Art. 8 of the Chapter 10 by repealing part and enacting any new section or sections thereof, but repeals the entire article and enacts in lieu thereof a new article. Further, the title of the Act of 1939, supra, did not refer to Art. 8, Chapter 10, R. S. 1929 only by section or article number, but as "Article 8 of Chapter 10, Revised Statutes of Missouri, 1929, relating to Justices of the Peace." It further purports to enact in lieu thereof a new article to be known as Article 8, "relating to the same subject matter." While the words "relating to the same subject matter," as used in the title to the 1939 act, may be considered a reference to the true title of the 1915 act, Laws 1915, p. 324 (which, in addition to the heading "Justices of the Peace," in fact descended into particulars and limited its application only to townships containing 75,000 and not over 150,000 inhabitants and which was wholly repealed) yet on the face of the title, we believe the reference is to the general subject "Justices of the Peace," actually mentioned in the title of the act of 1939, supra (Laws 1939, p. 340), as being the subject of Article 8, Chapter 10, R. S. 1929. See, Williams Lumber & Manfg. Co. v. Ginsburg, 347 Mo. 119, 146 S. W. (2d) 604, 605(6). It is immaterial that the title is erroneous in referring to Article 8, Chapter 10, R. S. 1929 as relating to the general subject of "Justices of the Peace," when in fact it descends into particulars and limits the general subject. We must consider the title as it appears. The question here presented is whether the subject matter of Sec. 2366 (Laws 1939, p. 340 and later designated Sec. 2752, R. S. 1939), to wit, that in counties "of not less than 200,000 nor more than 400,000 inhabitants," and "beginning with the general election of 1942, no justice of the peace should be elected except as therein provided," was within the title or designation that actually accompanied the 1939 act at the time it was passed and approved; that

is, whether the bill (C. S. H. B. No. 359) contained more than one subject, and whether that one subject was clearly expressed in the title.

Article 4, Sec. 28 of the Constitution of Missouri, though mandatory, must be given a reasonable and liberal construction. Star Square Auto Supply Co. v. Gerk, 325 Mo. 968, 981, 30 S. W. (2d) 447, 453; Graves v. Purcell, 337 Mo. 574, 85 S. W. (2d) 543. "We resolve the doubt, if any, in favor of validity, if the challenged legislation is germane and relates either directly or indirectly to the main subject," of the act as expressed in its title. State ex rel. Lorantos v. Terte, 324 Mo. 402, 23 S. W. (2d) 120, 121. "The purpose of this requirement is to prevent surprise or fraud upon the legislators by barring from the body of a bill everything not indicated by the title. . . . If the title is restrictive, the act must also be restrictive." State ex inf. McKittrick v. Murphy, 347 Mo. 484, 148 S. W. (2d) 527, 532; Edwards v. Business Men's Assur. Co., 350 Mo. 666, 168 S. W. (2d) 82, 92 "Where the title goes into such detail as would reasonably lead to the belief that nothing was included except that which is specified then any matter not specified is not within the title. Any such matter beyond the title is void because of Sec. 28, Article IV of the Constitution." State ex rel. Fire Dist. of Lemay v. Smith, 353 Mo. 807, 184 S. W. (2d) 593, 596. "By the title is meant that designation prefixed to an act by the Legislature which defines the character of the legislation." State v . Thomas, 301 Mo. 603, 256 S. W. 1028, 1029.

The only subject that actually appears on the face of the title of the 1939 act is that of "Justices of the Peace." There was nothing in this title as it appears on its face, that would reasonably lead to the belief that nothing was included therein except matters relating to Justices of the Peace in townships containing 75,000 and not over 150,000 inhabitants. While the subject of the 1915 act (Laws 1915, p. 324) was limited by its title to townships of 75,000 to 150,000 inhabitants, no such limitation expressly appears in the title to the new article 8, (Laws 1939, p. 340). The subject of the new act is general. See, Edwards v. Business Men's Assur. Co., supra. The bill contained only one subject, which was clearly expressed in the title. The same applies for Sec. 2752, Laws 1941, p. 417. The claim of unconstitutionality is overruled. It, therefore, follows that the office held by respondent was abolished, effective at the end of his four year term, because after that date there was no applicable law authorizing its existence. No successor then being provided for by law, the words "until his successor in said office shall be duly appointed and qualified" (as they appeared in respondent's commission) could not extend his term of office. Nor could respondent be re-elected to an office that did not exist.

 Respondent further contends that the judgment of the circuit court ousting respondent is in direct conflict with the "judgment of

the county court establishing an office of justice of the peace in Clayton Township in University City, a city of thirty thousand inhabitants''; and that the judgment of the county court cannot be repealed by the legislature, because the county court ''acted judicially in establishing this office, precluding an attack in quo warranto except for fraud.'' A reference is made to respondent's commisison, as issued following his election in 1938. Cases are cited to the effect that ''the jurisdiction of the county court is fixed by the constitution and the legislature is without power to limit the power thus conferred,'' and to the effect that ''the same presumption will be indulged in favor of the regularity of proceedings in the county court and the validity of its judgments in matters within its exclusive jurisdiction as are indulged in favor of judgments of courts of general jurisdiction.'' No facts appear from the record with reference to any judgment of the county court and we assume that respondent infers its existence from the issuance of his commission following his election in 1938. However, the passage of a new statute (Laws 1939, p. 340), limiting St. Louis County to two justices in each township, and withdrawing St. Louis County from the provisions of the general law under which University City had been entitled to an additional justice of the peace, was not in conflict with any judgment of the county court and constitutes no basis for any valid attack upon the judgment of ouster as entered in the circuit court.

Respondent next contends that the judgment of ouster is in violation of Art. VI, Sec. 37 of the Constitution ''creating the office of Justice of the Peace'' in this state. Respondent says that the legislature can only regulate ''the powers, duties and duration in office.'' Respondent further says that a general law is used ''all over Missouri, except in Kansas City and St. Louis''; and that no local or special law may be enacted where a general law can be made applicable. Art. VI, Sec. 37, and Art. IV, Sec. 53, par. 32.

While the office of justice of the peace is a constitutional office (State ex rel. Rowan v. Pollock, 310 Mo. 620, 276 S. W. 20), there is nothing in Art. VI, Sec. 37, limiting the power of the legislature in determining how many justices of the peace the public good requires or from determining the districts from which they shall be elected or appointed. Nor does Art. IV, Sec. 53, par. 32 prohibit a reasonable classification, as here, according to population and where the law is applicable alike to all counties within the classification.

Respondent further contends that the ''State of Missouri is estopped from complaining'' concerning the validity of respondent's office and respondent's right thereto because, after the filing of the information herein, the attorney general filed forty tax suits on behalf of the state in respondent's court. No authorities are cited and the record disclosed no facts upon which to base an estoppel, even

1028

if the principle of estoppel were otherwise applicable against the state. See, Blodgett v. Perry, 97 Mo. 263, 10 S. W. 891, 892; Waugh v. Williams, 342 Mo. 903, 119 S. W. (2d) 223, 226.

The judgment is affirmed. *Bradley* and *Van Osdol, CC.*, concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.