**STATE of Missouri, ex inf. Jeremiah W. (Jay) Nixon, Attorney General of Missouri, Appellant,**

v.

**Cole County Circuit Judges Byron L. KINDER and Thomas J. Brown, III, Respondents.**

No. SC 84301.

Supreme Court of Missouri, En Banc.

Nov. 26, 2002.

---

Jeremiah W. (Jay) Nixon, Atty. Gen., James R. McAdams, Asst. Atty. Gen., Jefferson City, for Appellee.

Robert G. Russell, Sedalia, Dale C. Doerhoff, Jefferson City, for Respondents.

PER CURIAM.

Attorney General Jeremiah W. Nixon filed the instant action in the nature of *quo warranto* asking the Circuit Court of Osage County to "oust" Cole County Circuit Judges Byron L. Kinder and Thomas J. Brown, III from continuing to exercise supervisory authority over four receivership funds held in the registry of the Circuit Court of Cole County, and to instead pay the money in those funds over to the state treasurer. The funds consist of unclaimed monies in four suits pending for at least five years in Cole County in which defendants were directed to make refunds or distributions to utility customers, telephone company customers, or insurance liquidation claim holders. While many of those with claims to some of the monies in these funds have been identified and paid by the defendants or receivers in the underlying cases, the underlying cases remain pending for the purpose of identifying the remaining persons to whom payment is due, so that orders may be made determining the amounts to which they are entitled and payments may be ordered by the court.[1]

The attorney general nonetheless contends that respondent judges no longer have authority over the remaining funds because sections 447.539 and 447.543, RSMo 2000, a part of the Uniform Disposition of Unclaimed Property Act (hereinafter UDUPA),[2] require the judges to report and pay over any remaining amounts to the state treasurer once the funds had been in existence for five years. The attorney general alleged that in retaining supervisory authority over the funds for more than five years, the judges are usurping power over the funds that should be exercised by the treasurer; and therefore, a writ of *quo warranto* should issue to confine the judges within their statutory authority.

The trial court dismissed the suit. The attorney general appealed to the Court of Appeals, Eastern District, which has jurisdiction over the Circuit Court of Osage County, alleging that section 531.010 did give the trial court supervisory authority over Cole County circuit judges for the purpose of granting relief in *quo warranto*. Because other cases relating to these same funds were pending in this Court (*see note 1* ), this Court granted transfer prior to opinion. Mo. CONST. art. V, sec. 10.

*Quo warranto* is available only where it is alleged that an official has exercised a power he or she does not have, not where, as here, it is alleged that the official exercised an existing power wrongly or for too long of a period. Clearly circuit judges

---

1. These funds are the same as those at issue in *In re Ancillary Adversary Proceeding Questions,* 89 S.W.3d 460 (Mo. banc 2002), and in *Farmer v. Kinder, et al.,* 89 S.W.3d 447 (Mo. banc 2002). A detailed history of the funds is set out in Farmer and will not be repeated here except as to procedural facts necessary to an understanding of this decision.

2. All statutory references are to the RSMo 2000, unless otherwise indicated.

have the authority to exercise supervisory authority over funds paid into the registry of their courts. Equally basically, even were *quo warranto* theoretically available, the exercise of power by the circuit court of Osage County over the circuit judges of Cole County is prohibited by article V, section 4(1) of the Missouri Constitution. To the extent that the final sentence of section 531.010 states otherwise, it is in conflict with article V, section 4(1) and, so, is invalid. The judgment is affirmed.

## QUO WARRANTO AND SUPERVISORY AUTHORITY

*Quo warranto* is a writ of very ancient origin, dating back to the earliest days of the common law. Its original purpose was to inquire into the legality of the claim of one who purported to have the right to enjoy and exercise a particular office granted by the Crown. *See Quo Warranto in Missouri*, 1972 WASH. U.L.Q. 751. Its function remains basically the same today, to oust a "usurper" from the exercise or enjoyment of an office or franchise. Sec. 531.010. The powers of a lower court to grant *quo warranto* are now set out in section 531.010 and Rule 98. *See State ex inf., McKittrick v. Murphy*, 347 Mo. 484, 148 S.W.2d 527, 530 (1941) (noting codification of *quo warranto* ).

The attorney general contends that section 531.010 authorizes the filing of this *quo warranto* action requesting the *Circuit Court of Osage County* to issue its writ ousting *Cole County Circuit Court* Judges Kinder and Brown from exercising authority over the four receivership funds existing in the registry of *Cole County*. Therefore, he argues, the trial court erred in holding that it had no authority to direct Judges Kinder and Brown as to how to administer the receivership funds.

Section 531.010 on its face does appear to permit the attorney general to ask a circuit judge of one county to *oust a usurper to the office of circuit judge* of another, adjoining county, for it states in relevant part:

> In case any person shall usurp, intrude into or unlawfully hold or execute any office or franchise, the attorney general of the state, . . . shall exhibit to the circuit court, or other court having concurrent jurisdiction therewith in civil cases, an information in the nature of a quo warranto. . . . *If such information be filed or exhibited against any person who has usurped, intruded into or is unlawfully holding or executing the office of judge of any judicial circuit, then it shall be the duty of the attorney general of the state, . . . to exhibit such information to the circuit court of some county adjoining and outside of such judicial circuit, and nearest to the county in which the judge so offending shall reside.*

(emphasis added).

The attorney general says section 531.010 applies here, for he alleges that the judges are exercising control over money that should be in the treasury and, therefore, they are usurping the treasurer's office. His argument is incorrect for two reasons.

First, the attorney general necessarily admits that the funds that he claims should be in the treasury are funds that were paid into court and that for at least five years were legitimately the subject of a receivership and were properly under the supervision of respondent judges. He merely claims that the judges then were required by statute to report and turn the funds over to the treasurer after five years. Whether or not his allegations of a duty to pay over the funds are correct, it is clear that he is not claiming that respon-

dent judges have usurped, intruded into or are unlawfully holding or executing the office of judge, but rather that they are improperly continuing to exercise control over funds that were once properly under their supervision but which, the attorney general alleges, should now be under the jurisdiction of the treasurer.

This Court has long held that such allegations are not an appropriate subject for an action in *quo warranto*, but rather must be raised, if at all, by means of a writ of mandamus or prohibition.[3] This is because:

> The writ of quo warranto is not a substitute for mandamus or injunction nor for an appeal or writ of error. It is not to be used to prevent an improper exercise of power lawfully possessed. Its purpose is solely to prevent an officer or a corporation or persons purporting to act as such from usurping a power which they do not have.

*McKittrick,* 148 S.W.2d at 530. This Court continued:

> In a case of quo warranto, if the constitution or a statute in conformity therewith intrusts an officer with the performance of a certain governmental function and he proceeds to perform that function [347 Mo. [at] 492] in a manner contrary to law, there is no usurpation and quo warranto will not lie, but where the officer steps entirely outside the scope of his authority to exercise a function which neither the constitution nor the statute has intrusted to him, the remedy by quo warranto is available.

*Id.* at 531. In other words, *quo warranto* is only available to deal with usurpation of power not possessed; prohibition or mandamus is the appropriate remedy where, as here, the basis of the allegation against respondent judges is really that they have illegally or improperly used powers granted to them. *Id.* at 530–531.

Second, even were an extraordinary writ available to deal with the wrongful exercise of power alleged by the attorney general, it could not be sought in a circuit court of concurrent jurisdiction, as was attempted here. While the final sentence of section 531.010 does state that one circuit court can exercise such authority over another judge of an adjoining circuit, this grant of power clearly violates article V, section 4(1) of the Missouri Constitution, which provides:

> The supreme court shall have general superintending control over all courts and tribunals. Each district of the court of appeals shall have general superintending control over all courts and tribunals in its jurisdiction. The supreme court and districts of the court of appeals may issue and determine original remedial writs. *Supervisory authority over all courts is vested in the supreme court which may make appropriate delegations to this power.*

(emphasis added).

In seeking to reconcile section 531.010 with this constitutional provision, this Court is mindful that an act of the legislature carries a strong presumption of

---

3. The attorney general argues that he did seek a writ of prohibition in the Court of Appeals, Western District, but that court denied the writ, and so he was without a remedy except by filing this action in *quo warranto*. But, the attorney general made no attempt to seek a writ in this Court, and the denial of the writ by the court of appeals means nothing, for a court may deny a writ for a number of reasons. Such denial does not necessarily mean that petitioner cannot establish a right to relief in a later proceeding. *See Norval v. Whitesell,* 605 S.W.2d 789, 791 (Mo. banc 1980); Rule 84.24(n). The attorney general also made no effort to seek relief in Cole County itself.

constitutionality. *Home Builders Ass'n of Greater St. Louis v. State*, 75 S.W.3d 267, 269 (Mo. banc 2002). This Court will not invalidate a statute "unless it clearly and undoubtedly contravenes the constitution and plainly and palpably affronts fundamental law embodied in the constitution." *Smith v. Coffey*, 37 S.W.3d 797, 800 (Mo. banc 2001), *quoting, In re Marriage of Kohring*, 999 S.W.2d 228, 231 (Mo. banc 1999). Nonetheless, if a statute conflicts with a constitutional provision or provisions, this Court must hold the statute invalid. *State ex rel. Upchurch v. Blunt*, 810 S.W.2d 515, 516 (Mo. banc 1991).

■ In particular, a statute cannot expand the Osage County Circuit Court's or any court's jurisdiction beyond that permitted by the constitution. For this reason, in *In re Rules of Circuit Court for Twenty–First Judicial Circuit*, 702 S.W.2d 457 (Mo. banc 1985), this Court invalidated a statute that purported to set out certain rules governing circuit courts and presiding judges, stating:

> While we are cognizant of the power the legislature is granted by Mo. Const. art. V, sec. 5 to 'annul or amend in whole or in part' our rules of practice and procedure, this does not include the power to interfere with this Court's 'superintending control of all courts and tribunals' as is provided in Mo. Const. art. V, sec. 4.1 and our rules made pursuant thereto.

*Id.* at 459.[4]

■ These principles are applicable here. Article V, section 4(1) of the Consti-

tution of Missouri provides that the Supreme Court has general superintending control over all courts, and each district of the court of appeals has superintending control over the circuit and other courts within its district, subject to the general supervisory authority of the Supreme Court. Article V provides that no other court is permitted to exercise supervisory or superintending authority over circuit courts unless that power is specifically delegated to it by the Supreme Court. The Supreme Court has not delegated supervisory power over circuit courts to any lower court.

The Circuit Court of Cole County is a lower court within the western district of the Missouri Court of Appeals. The Circuit Court of Cole County and the judges thereof are therefore subject only to the superintending jurisdiction of this Court and the Missouri Court of Appeals, Western District. Mo. CONST. art. V, sec. 4(1). The Circuit Court of Osage County, where the attorney general filed suit, is not this Court, nor is it the Court of Appeals, Western District, nor, indeed, is it even located in the western district of the Court of Appeals.[5] Under the constitution, then, the Circuit Court of Osage County cannot exercise jurisdiction over the Circuit Court of Cole County or the judges thereof.

For these reasons, insofar as the final sentence of section 531.010 purports to give a circuit judge of one county authority to issue a *quo warranto* against a circuit

---

4. *See also State ex rel. City of St. Louis v. Mummert*, 875 S.W.2d 108, 109 (Mo. banc 1994) (rejecting the metropolitan sewer district's attempt to impose additional duties and authority on the circuit court of St. Louis, stating that superintending authority over circuit courts resides in the Supreme Court and "Article V clearly does not grant municipal corporations (like MSD) any authority to supervise or control circuit judges.").

5. In fact, the difficulties that would occur if one circuit court were allowed to exercise jurisdiction over a circuit court of a different county are shown by the facts of this very case. The attorney general's appeal of the Osage County Circuit Court's judgment was to the Court of Appeals, Eastern District, yet that court itself has no authority over respondent judges, for, as noted, Cole County is in the western district.

judge of an adjoining county, it is in conflict with article V, section 4(1) and is void as an unconstitutional delegation to adjoining circuit courts of powers reserved to this Court and the court of appeals.

Affirmed.

LIMBAUGH, C.J., WHITE, BENTON and LAURA DENVIR STITH, JJ., and SMITH, HOWARD and BRECKENRIDGE, Sp.JJ., concur. WOLFF, PRICE and TEITELMAN, JJ., not participating.