STATE of Missouri ex rel. CITY OF DESLOGE, Missouri, et al., Plaintiffs–Respondents,

v.

ST. FRANCOIS COUNTY, Missouri, et al., Defendants–Appellants.

No. ED 89807.

Missouri Court of Appeals, Eastern District, Division One.

Dec. 26, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 30, 2008.

Application for Transfer Denied March 18, 2008.

V. Kenneth Rohrer, Farmington, MO, for plaintiffs-respondents.

James Mello, Jeffrey McPherson, Matthew Shorey, St. Louis, MO, for defendants-appellants.

KENNETH M. ROMINES, Judge.

### Introduction

This is a mandamus case which involves the procedure for management of a tax increment financing (TIF) project under the Real Property Tax Increment Allocation Redevelopment Act, Sections 99.800 to 99.865 RSMo. (2000)[1] ("the TIF Act"). St. Francois County ("the County") appeals the trial court's judgment granting the mandamus action filed by the Cities of Desloge, Bonne Terre, and Farmington ("the Cities"). The trial court found that the County had a duty under the TIF Act to distribute tax revenues to the Cities and was not permitted to withhold four percent of the revenues as an administrative fee. The County argues it was permitted to do so both by statute and by the Cities' actions in budgeting for the administrative fee. The County alternatively argues that if the fee is not authorized, then the TIF Act violates Article X, Sections 16 and 21 of the Missouri Constitution ("the Hancock Amendment"). We modify the award of interest and affirm as modified.

### Factual and Procedural Background

The TIF Act authorizes a city to undertake a redevelopment project under certain conditions laid out in Section 99.810. Funds for the redevelopment project come essentially from the future increase in the value of the land once the redevelopment project is complete. The TIF Act calls for the city implementing the plan to create a TIF Commission to formulate the plan and oversee its implementation. Sections 99.820.2 and 99.820.3. The Commission's actions are subject to the final approval of the governing body of the municipality. Section 99.820.3. The Commission's recommendations go into effect upon the municipality's adoption of them by ordinance or resolution. *See, e.g.,* Sections 99.820.1(14); 99.820.3; 99.825; 99.835. Once the redevelopment plan is in place, the municipality begins to accumulate funding in a special allocation fund. Each year that the post-plan assessed value of the taxable real property within the redevelopment project area exceeds the pre-plan assessed value, property taxes on the increase in value are abated. Instead of paying taxes, the landowners make payments in lieu of taxes equal to the amount the taxes would have been after improvements. Section 99.805(10). Those payments go into the special allocation fund. Section 99.845.1(2). Additionally, fifty percent of the additional economic activity taxes (EATs) generated by the redevelopment go into a separate account within the special allocation fund. Section 99.845.3. Section 99.845 sets out the procedure for collection and distribution of the special allocation fund. Specifically, it falls upon the county collector to collect the payments in lieu of taxes and the EATs. The county collector then must pay those funds to the finance officers of the municipalities for deposit into the municipalities' special allocation funds. Sections 99.845.1–99.845.3.

The respondent Cities in this case each implemented a TIF project. On 30 December 2005, the Cities initiated a mandamus action in the circuit court of St. Francois County, claiming that for taxable years 2004 and 2005, the County illegally assessed a four percent administrative fee

---

1. All statutory references are to RSMo. (2000) unless otherwise indicated.

against each city and excluded this fee from the additional revenue to be considered in the EATs calculations. The County admitted to charging the fee but argued that it was proper because the Cities had budgeted for such a fee. The Cities moved for summary judgment, which the court granted. The court held that paying over TIF funds is a ministerial duty subject to being compelled by mandamus, and the County had an unequivocal duty to pay the funds it had withheld. The court also found that the County "never requested that any of the TIF Commissions recommend, and the TIF Commissions never recommended, that [the County] receive an administrative fee or charge to calculate or pay tax increments due to the Cities in connection with the TIF districts." The court ordered the County to pay the amount withheld back to the Cities along with interest, which was calculated beginning on 1 January of the years following each tax year at issue.

The County raises four points on appeal. First, it argues that there was a genuine issue of fact as to whether the Cities' TIF Commissions recommended that the County receive the administrative fee. Second, the County argues that the TIF Act itself, Section 99.820(14), authorizes the County to withhold an administrative fee. Third, in the alternative, the County argues that if the fee is not authorized, then the TIF Act violates the Hancock Amendment because it imposes a new activity or service on the County without state funding. Finally, the County argues that interest should not be calculated from 1 January, because the tax calculations were not made each year until at least March.

### Standard of Review

■ Because this is an appeal from a grant of summary judgment, our standard of review is essentially *de novo*. *ITT*

*Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The fact that it was a summary judgment in a writ of mandamus action does not affect our standard of review. *See McDonald v. City of Brentwood*, 66 S.W.3d 46, 50 (Mo.App. E.D.2001) (applying *de novo* review to appeal of summary judgment in mandamus action). Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 74.04(c)(6). In making this determination, we review the record in the light most favorable to the non-movant. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 376.

### Discussion

#### The Existence of a Factual Dispute

■ The County argues first that summary judgment was improperly granted because there was a genuine factual dispute as to whether the Cities recommended that the County be paid an administrative fee. In the Cities' motions for summary judgment, they claimed that the TIF Commissions had never recommended that the County receive any administrative fee and further that the County had never requested an administrative fee from the Cities. The Cities offered affidavits of the secretaries of each TIF Commission to support this assertion. The County argues here that it put affidavits in its response which created a dispute regarding those alleged facts. The affidavits the County refers to came from Jim Henson, the County Presiding Commissioner who sat on both the Desloge and Farmington TIF Commissions; Chauncy Buchheit, the Executive Director of the Southeast Missouri Regional Planning and Economic Development Commission; and Patrick King, an assistant prosecuting attorney for the County. Mr. Henson's affidavit stated

that since each of the proposed TIF plans included budgeted items for administrative expenses, the County viewed these items as recommendations. Mr. Buchheit stated that the budgeted funds were of the type that could be used to pay the County's administrative fees. Mr. King stated that the County's Office of the Prosecuting Attorney determined that the County was authorized to collect the administrative fee.

We disagree with the County that these affidavits created a genuine issue of material fact. These affidavits merely confirmed that the Cities had in fact budgeted for administrative costs. The affidavits did not state whether the County had requested an administrative fee, nor did they state that the Cities had affirmatively recommended the fee. The fact that the County interpreted a budget line item as a recommendation does not create a factual dispute as to whether there was a recommendation, but rather a legal issue as to whether the budgeted item here constitutes a recommendation that the County receive an administrative fee, as authorized in Section 99.820.1(14). We hold it does not. Here, the budgets simply designated money to go to administrative fees; the Commissions did not decide to whom this money should go and neither did they make formal recommendations to that effect. The fact that the County prosecutor similarly misinterpreted the Cities' budgets as recommendations does not give the County's actions validity. There was no factual dispute as to the facts concerning the TIF Commissions' budgets, and as a matter of law, the undisputed facts showed that the Cities never made any recommendation that the County should withhold an administrative fee before distributing revenue owed to the Cities under the TIF Act. Point denied.

### Statutory Authorization for Fee

■ The County argues that Sections 99.805(7) and 99.820(14) together show that a county may charge an administrative fee. Section 99.805(7) defines a "municipality" to include "any county." Section 99.820.1(14) authorizes a municipality to "[c]harge as a redevelopment cost the reasonable costs incurred by its clerk or other official in administering the redevelopment project." Thus, the county argues, it was entitled to charge reasonable costs incurred in the administration of the various TIF projects.

We disagree. The Cities point out that the Act clearly intended that a county be considered a "municipality" only when that county creates and administers a TIF Commission and redevelopment plan. A reading of those sections in their context illuminates the point, but even Section 99.820.1(14) itself states that the costs are to be charged pursuant to "administering the redevelopment project." Under the TIF Act, it is the TIF Commission and the municipality which created the Commission who administer the redevelopment projects, not the county in which the municipality is located. Furthermore, Section 99.815 says, "When the term 'municipality' is used within sections 99.800 to 99.865, such term may be interpreted to include a county implementing a tax incremental financing project." Therefore, even though the TIF Act contemplates that counties may occasionally take on TIF projects and thus be considered municipalities for purposes of the Act, that does not mean that the Act's use of the word municipality automatically refers to a county.

Here, the Cities implemented TIF projects, not the County. Thus, the term municipality in the sections the County cites encompasses only the Cities. The County is not authorized by those sections to charge any administrative fee without approval by the Commissions and the Cities' governing bodies. Point denied.

*Hancock Amendment* [2]

### 1. Standing

■ First, the Cities argue that the County lacks standing to bring a Hancock Amendment challenge. Only taxpayers are authorized to bring challenges to the Hancock Amendment. *See* Missouri Constitution, Article X, Section 23; *Fort Zumwalt Sch. Dist. v. State*, 896 S.W.2d 918, 921 (Mo.1995). The Hancock Amendment does not exist to protect one level of government from another. *Fort Zumwalt*, 896 S.W.2d at 921. Therefore there is no standing for the County as an official entity. However, the County points out that in the present case, the County officials who brought suit alleged that each official was a taxpayer. In *Home Builders Ass'n of Greater St. Louis, Inc. v. City of Wildwood*, this Court said that "with respect to organizational standing in those cases [including *Fort Zumwalt*], we understand our Supreme Court to require an allegation that a plaintiff falls within any class of person that is statutorily specified as able to pursue litigation." 32 S.W.3d 612, 616 (Mo.App. E.D.2000). Thus, because the officials alleged they were taxpayers, they have standing to bring this Hancock Amendment challenge.[3]

### 2. Merits

■ Now we turn to the Hancock Amendment challenge itself. The County argues that if we find that the TIF Act does not authorize the County to collect an administrative fee as it did here, then the Act violates the Hancock Amendment. Specifically, the County argues that the Act imposes the cost of a new activity or service upon the County without state funds to compensate. In *County of Jefferson v. Quiktrip Corp.*, the Missouri Supreme Court dealt with whether Section 99.845 of the TIF Act, requiring the county collector to distribute TIF funds, violated the Hancock Amendment. 912 S.W.2d 487 (Mo.1995). The Court said it did not because "[d]istributing tax revenue is part of the normal operations of any county." *Id.* at 491.

The County would have us distinguish this case because in *Quiktrip*, the Court went on to say that the activity of calculating the amount due and writing checks to the city was *de minimus*. *Id.* The County argues that here, the activity required of the county collector was not *de minimus*, as evidenced by the affidavits the County filed showing the amount of time it took to fulfill the task. However, those affidavits simply show us how much time the employees spent on distributing TIF revenues to the Cities. There is no evidence that the County was forced to hire additional employees or pay higher salaries to existing employees in order to carry out its duties under Section 99.845. *See, e.g., Boone County Court v. State*, 631 S.W.2d 321, 325 (Mo.1982) (finding that because the county had to pay an additional salary, the state had to compensate). It does not appear to us that this was a new service or activity required of the County, but rather part of the County's existing duties. Point denied.

### Interest Calculation

■ Here the County argues that the trial court improperly calculated prejudg-

---

**2.** *Missouri Constitution, Article X, Sections 16 and 21.*

**3.** The Cities make much of the fact that the County officials were only brought into the original lawsuit in their official capacities, and thus they have no taxpayer standing. However, the County filed a counterclaim in the trial court, and it was in that petition that the officials alleged their statuses as taxpayers. Simply because it was not the Cities' intention to involve the officials individually, the officials are not precluded from doing so themselves.

ment interest for the money owed for tax years 2004 and 2005.[4] In its judgment, the trial court calculated interest starting on 1 January of the year following each tax year at issue. The County argues this is improper because the County did not conduct EATs calculations until at least March 2005 for tax year 2004, and February 2006 for tax year 2005. Thus, the County argues, the Cities were not entitled to payment until at least those dates and should not receive interest for nonpayment before then.

There is nothing in the record and the Cities have put forth no evidence showing when the payment of TIF funds becomes due. We do have evidence showing the dates the County made TIF payments to the Cities. For tax year 2004, the County paid each city sometime in March 2005. For tax year 2005, the payments came in March 2006 and June 2006. The Cities have at no time argued that these payments were late; the Cities simply argue that the payments constituted only 96% of what was due. The purpose of awarding interest is to fully compensate plaintiffs by awarding them the time-value of the money they should have received. *Children Int'l v. Ammon Painting Co.*, 215 S.W.3d 194, 203 (Mo.App. W.D.2006). Had the County paid the full 100% on the dates of payment there would be no issue, because as stated, we have no evidence that these payments were overdue. Sec-

tion 408.020 allows prejudgment interest only upon claims that are liquidated, with damages that are ascertainable. *Baris v. Layton*, 43 S.W.3d 390, 397 (Mo.App. E.D. 2001). There would have been no way to determine the amount of payment due before those calculations were made. Therefore, the trial court's calculation was incorrect. Interest on the missing 4% of each payment should be calculated from the date on which it would have been paid. Additionally, the trial court's calculation of interest was incorrect for the City of Farmington in tax year 2005. The trial court used the wrong number of days and arrived at a sum that was too high.

When the error is a matter of mathematical calculation only, we can amend the judgment accordingly. *See Manula v. Terrill*, 136 S.W.3d 528, 530 (Mo.App. E.D.2004) (stating that when there is no factual dispute but only dispute as to their legal significance, an appellate court may enter the judgment the trial court should have entered). Thus, we will recalculate the proper amount of prejudgment interest as to each city and enter judgment accordingly.

For tax year 2004, the trial court determined that the County owed Bonne Terre $549.69. The County's payment for that year was made on 21 March 2005 (L.F. 310). Thus, the interest as of 1 April 2007 is $100.44.[5] That same year, the County

---

4. The trial court did not specify its basis for granting prejudgment interest, but the general prejudgment interest statute is Section 408.020. The Cities did not specifically request such interest in their petition. In the County's Motion to Amend the Judgment at the trial level, the County asserted that Section 408.020 did not authorize prejudgment interest, but the County did not make that argument on appeal. Because neither party questions the applicability of Section 408.020 to the present case, we will not address it

here despite suspicion that its applicability may be misplaced.

5. For each of these calculations, we take the amount the trial court determined was due to each city (which is the 4% originally withheld), determine the annual interest (amount due times .09), determine the daily interest (annual interest divided by 365), and calculate the interest as of 1 April 2007 (daily interest times the number of days between the first payment and 1 April 2007). For Bonne Terre, tax year 2004, the calculation is as

owed Desloge $17,083.76. The payment to Desloge was on 4 March 2005 (L.F.311). Thus, the interest as of 1 April 2007 is $3,193.02.[6] For Farmington, the court determined the County owed $11,498.29. The County's payment was 21 March 2005 (L.F.312). Thus, the County owes $2,100.88 in interest through 1 April 2007.[7]

For tax year 2005, the trial court determined that the County owed Bonne Terre $754.39. The payment from the County was on 2 March 2006 (L.F.310). Thus, the interest is $73.48.[8] For Desloge, the trial court determined the County owed $17,914.08. The first payment to Desloge for that year was on 10 March 2006 (L.F. 311).[9] Thus, the County owes Desloge interest in the amount of $1709.44.[10] Finally, the court determined the County owed Farmington $11,478.14. The payment to Farmington was on 14 June 2006 (L.F.312). Thus, the interest due to Farmington is $823.60.[11]

In sum, the County owes interest, as of 1 April 2007,[12] in the amounts of $173.92 to Bonne Terre, $4,902.46 to Desloge, and $2,924.48 to Farmington. The judgment is modified accordingly.

### Conclusion

There was no genuine issue of fact as to whether the TIF Commissions recommended that the County retain a 4% administrative fee: we find they did not. The TIF Act does not authorize a county to withhold such a fee absent approval by the TIF Commissions. The fact that the TIF Act does not authorize this withholding does not render it violative of the Hancock Amendment because collecting and distributing tax revenue is part of the normal operations of the county collector. Finally, the trial court improperly calculated prejudgment interest because damages were not ascertainable until the County's EATs calculations were made each year. The judgment is modified to reflect an interest award as of the dates of the County's first payments each year; $173.92 to Bonne Terre, $4,902.46 to Desloge, and $2,924.48 to Farmington.

AFFIRMED AS MODIFIED.

KATHIANNE KNAUP CRANE, P.J., and ROBERT G. DOWD, JR., J., concur.

---

follows: $549.69 times .09 divided by 365 times 741 days equals $100.44.

6. $17,083.76 times .09 divided by 365 times 758 days equals $3,193.02.

7. $11,498.29 times .09 divided by 365 times 741 days equals $2,100.88.

8. $754.39 times .09 divided by 365 times 395 days equals $73.48.

9. We note there was more than one payment this year for Desloge. However, the additional payment was due to mathematical error. Therefore, we calculate all of the interest as of the first date the full payment should have been made.

10. $17,914.08 times .09 divided by 365 times 387 days equals $1709.44.

11. $11,478.14 times .09 divided by 365 times 291 days equals $823.60.

12. We use the date of 1 April 2007 as the trial court did, though we note that the judgment was actually filed on 29 March 2007. As the Cities point out, this will not affect the actual amounts the Cities receive because the post-judgment interest is assessed at the same rate of 9%.