

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI ex inf. CHARLES J. DYKHOUSE, BOONE COUNTY COUNSELOR, in his official capacity, | ) ) ) ) ) | |
| Respondent, | ) ) | WD79352 |
| v. | ) ) ) | OPINION FILED: January 17, 2017 |
| CITY OF COLUMBIA, MISSOURI, | ) ) ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Boone County, Missouri**
**The Honorable Gary M. Oxenhandler, Judge**

**Before Division Two:** Lisa White Hardwick, Presiding Judge, and
Karen King Mitchell and Anthony Rex Gabbert, Judges

Charles J. Dykhouse filed a petition in quo warranto, purportedly in his capacity as Boone County Counselor, seeking to oust the City of Columbia from engaging in any tax increment financing (TIF) projects for a minimum of five years. Dykhouse argued that, while engaged in previous TIF projects, City violated the statutory reporting requirements for municipalities engaging in TIFs and, therefore, lost its authority to continue engaging in TIF projects by operation of law. Despite numerous objections, writ petitions, and dispositive motions from City arguing

that Dykhouse lacked authority to file a quo warranto action and that the alleged violations did not fall within the purview of quo warranto proceedings, the circuit court nonetheless entered a judgment of ouster, prohibiting City "from implementing any new tax increment finance project . . . through December 31, 2019." Because Dykhouse lacked authority to seek quo warranto and because City's alleged violation is not the proper subject for a quo warranto proceeding, we reverse the decision of the trial court with instructions to dismiss the petition.

**Background**

**A. The TIF Act, §§ 99.800-99.865**[1]

"The TIF Act authorizes a city to undertake a redevelopment project under certain conditions laid out in Section 99.810." *State ex rel. City of Desloge v. St. Francois Cty.*, 245 S.W.3d 855, 858 (Mo. App. E.D. 2007). "Funds for the redevelopment project come essentially from the future increase in the value of the land once the redevelopment project is complete." *Id*. "The TIF Act calls for the city implementing the plan to create a TIF Commission to formulate the plan and oversee its implementation." *Id*. "The Commission's actions are subject to the final approval of the governing body of the municipality." *Id*. "The Commission's recommendations go into effect upon the municipality's adoption of them by ordinance or resolution." *Id*. "Once the redevelopment plan is in place, the municipality begins to accumulate funding in a special allocation fund." *Id*. "Each year that the post-plan assessed value of the taxable real property within the redevelopment project area exceeds the pre-plan assessed value, property taxes on the increase in value are abated." *Id*. "Instead of paying taxes, the landowners make payments in lieu of taxes equal to the amount the taxes would have been after improvements." *Id*. "Those payments go into the special allocation fund." *Id*.

---

[1] All statutory citations are to the Revised Statutes of Missouri 2000, as updated through the 2013 Cumulative Supplement, unless otherwise noted.

Under § 99.865, municipalities engaging in TIF projects have certain reporting obligations regarding the status of each redevelopment plan and project. Before 2009, the statute was silent regarding any penalty for noncompliance. But, in 2009, § 99.865.7 was enacted, and it provided: "Any municipality which fails to comply with the reporting requirements provided in this section shall be prohibited from implementing any new tax increment finance project for a period of no less than five years from such municipality's failure to comply." 2009 Mo. Laws 379 (HB 191).

**B. City's TIF projects and quo warranto proceedings**

Beginning in 2009, under the authority of the TIF Act, City engaged in the creation of three separate TIF projects—the 10th and Locust Redevelopment Plan, the Tiger Hotel Redevelopment Plan, and the Regency Hotel Redevelopment Plan. The 10th and Locust Redevelopment Plan was never constructed, but both the Tiger Hotel and the Regency Hotel Redevelopment Plans were substantially complete and in operation by 2014. In December 2013, City began an evaluation to determine whether to establish an additional TIF district in central Columbia, and it performed a cost-benefit analysis to determine feasibility.

On January 24, 2014, the Boone County Commission (Commission) sent a letter to City via the city council (Council), formally requesting City to abandon any efforts to create a downtown TIF district. The Commission identified various concerns and asked to be included in a discussion of possible alternative solutions. The Commission's letter closed by expressing a desire "to avoid a needless and costly legal battle regarding Columbia's ability to implement any new tax increment financing projects due to its failures to provide required, annual reporting on its existing TIF efforts." The Commission requested that City "terminate the TIF effort currently underway" and confirm its intent to do so no later than January 31, 2014.

3

On February 6, 2014, Dykhouse, purportedly acting *ex officio* as the Boone County Counselor, filed a petition in quo warranto, naming City as Respondent, seeking a "[j]udgment of [q]uo [w]arranto finding that [City, via the operation of § 99.865.7] lacks the authority it is usurping to itself by attempting to engage in a new TIF project[ and] ordering that such lack of authority will persist through at least December 31, 2017." Dykhouse alleged that his authority to file the petition derived from § 56.640.3.

On February 17, 2014, City abandoned its effort to create the central Columbia TIF district, and as of April 2014, City was no longer pursuing the formation of any TIF district within its borders.

In response to Dykhouse's petition, City repeatedly, but unsuccessfully, argued in dispositive motions and writ petitions that Dykhouse, as County Counselor, lacked standing to bring a quo warranto action, that quo warranto did not lie under the facts alleged, and that the issue was not ripe in light of the fact that City had abandoned its only effort to create a new TIF district. The trial court rejected City's arguments and entered findings of fact and conclusions of law, determining that City had repeatedly violated its reporting obligations under § 99.865 and was, therefore, "prohibited from implementing any new tax increment finance project for a period of no less than five (5) years from the last violation of the reporting requirements of RSMo §99.865, or through December 31, 2019." City appeals.

**Analysis**

City brings nine points on appeal. In its first point, City argues that the trial court erred in finding the matter ripe for review in light of the facts that City had abandoned its only existing effort to create a new TIF district and had no new plans in the works. In its second point, City argues that the trial court erred in finding that quo warranto was the appropriate vehicle for

Dykhouse's challenge, as City had the power to create TIF districts and, therefore, was not a usurper. In its third and fourth points, City argues that Dykhouse, as a County Counselor, either lacked standing to bring a quo warranto action or failed to prove necessary facts to establish standing. In its fifth and sixth points, City challenges the trial court's determination that City violated its reporting obligations. In its seventh and eighth points, City challenges the admission of certain evidence as beyond the scope of the pleadings. And in its ninth and final point, City argues that the trial court erred in finding that the most recent violation occurred on December 31, 2014. Because we find the second and third points dispositive, we do not reach City's remaining points.

## A. Dykhouse lacked authority to bring a quo warranto action.

In its third point on appeal, City argues that Dykhouse lacked "standing" to bring a quo warranto action because (among other reasons) he is neither the Attorney General nor the county prosecutor. We find that Dykhouse had no authority to bring a quo warranto action.

"[A]ppellate review of whether a party has standing to sue is conducted *de novo.*" *Exec. Bd. of Mo. Baptist Convention v. Carnahan*, 170 S.W.3d 437, 445 (Mo. App. W.D. 2005). "The question of standing is determined as a matter of law, based upon the petition 'along with any other non-contested facts accepted as true by the parties at the time the motion to dismiss was argued.'" *Id.* (quoting *Inman v. Mo. Dep't of Corr.*, 139 S.W.3d 180, 184 (Mo. App. W.D. 2004)). "The question of standing is a threshold issue." *Id.* "A party cannot obtain relief from a court if that party lacks standing." *Id.* (quoting *Cont'l Coal, Inc. v. Mo. Land Reclamation Comm'n*, 150 S.W.3d 371, 378 (Mo. App. W.D. 2004)).

5

When Dykhouse filed the petition, he purportedly did so on personal information.[2] Rule 98.02,[3] at the time the petition was filed in 2014, provided that, when based upon personal information, "[a]ny of the following may be relators [in a proceeding for quo warranto]: . . . [t]he attorney general of this state . . . or . . . [t]he prosecuting attorney." But Dykhouse was neither the Attorney General nor the prosecuting attorney. As County Counselor, he did not fall within the purview of proper relators under Rule 98.02. *See State ex rel. St. Charles Cty. Counselor v. City of O'Fallon*, 53 S.W.3d 211, 213-14 (Mo. App. E.D. 2001) (noting that a county counselor constituted a private relator and, therefore, could prosecute an action in quo warranto "only . . . if the Attorney General or the prosecuting attorney authorize[d] the action.").

In the petition, however, Dykhouse invoked the authority of § 56.640.3. That statute provides,

> Notwithstanding any law to the contrary, the county counselor in any county of the first classification and the prosecuting attorney of such county may by mutual cooperation agreement prosecute or defend any civil action which the prosecuting attorney or county counselor of the county is authorized or required by law to prosecute or defend.

Dykhouse argued that he and the Boone County Prosecutor had entered a mutual cooperation agreement and that Dykhouse was, therefore, authorized—by virtue of the county prosecutor's authority under Rule 98.02—to bring a quo warranto action. In support of his argument, Dykhouse presented the following affidavit to the trial court from the Boone County Prosecutor:

---

[2] Though Rule 98.02(b)(2) permits quo warranto proceedings to be brought on behalf of a private party "with a special interest in the subject matter of the action," Dykhouse has repeatedly stated that he brought the current action on his own information in his official capacity as the Boone County Counselor and *not* as a private party.

[3] All Rule references are to the Missouri Supreme Court Rules (2014), unless otherwise noted.

**AFFIDAVIT OF BOONE COUNTY PROSECUTOR DANIEL K. KNIGHT**

STATE OF MISSOURI )
                )ss
COUNTY OF BOONE )

COMES NOW Daniel K. Knight, and after being duly sworn states as follows:

1. I am the duly-elected and serving Boone County Prosecutor.
2. I have agreed to cooperate, within the meaning of RSMo Sec. 56.640.3, with Boone County Counselor C.J. Dykhouse in the filing of civil actions that Mr. Dykhouse deems legally appropriate in connection with Tax Increment Financing matters after Mr. Dykhouse's investigation into the same.
3. All discussions regarding the scope and nature of our cooperation in civil matters and civil actions have been done within the scope of the existing and ongoing attorney-client relationship between the Boone County Prosecuting Attorney and Mr. Dykhouse as Boone County Counselor.
4. Further, Affiant sayeth not.

_Daniel K. Knight_
DANIEL K. KNIGHT

SUBSCRIBED AND SWORN to before me, a notary public, this 24th day of October, 2014.

_Bonnie Adkins_
Notary Public

My Commission Expires: 6-8-15

Dykhouse presented no further evidence regarding the date, nature, or scope of the agreement.[4]

The question then is, to the extent that § 56.640.3 is inconsistent with Rule 98.02 as to who may be a relator in a quo warranto action, whether Rule 98.02 or § 56.640.3 controls. We have found no case law regarding the interplay between Rule 98.02, as it existed in 2014, and § 56.640.3. The *City of O'Fallon* case cited above did not involve any alleged mutual cooperation agreements

---

[4] Though City sought disclosure of this information, Dykhouse argued below that it was protected from discovery by attorney-client privilege. It appears that the trial court accepted this argument, and City has not challenged that ruling on appeal. We are, however, dubious of this claim, as nothing in § 56.640.3 suggests that either party to a mutual cooperation agreement would have the ability to ethically act in a representative capacity for the other in entering the agreement. Though § 56.640.1 provides that "the county counselor . . . shall represent the county and all departments, officers, institutions and agencies thereof, except as otherwise provided by law," it is also limited to only "*civil suits or actions*" in which the county or any county officer . . . is a party." Plainly, a mutual cooperation agreement under § 56.640.3 is not a civil suit or action requiring any representation by the county counselor. While § 56.640.1 provides a mechanism for a county counselor to provide opinions, upon request, to any county officer, even if such a request could involve the decision of whether to enter a mutual cooperation agreement with the county counselor himself, such opinions, by express terms of the statute, must be in writing. Such requirements are presumably to avoid coming within the crosshairs of Rule 4-1.11(e)(1), which provides that "[a] lawyer holding public office shall not attempt to influence any agency of any political subdivision of which such lawyer is a public officer, other than as a part of his or her official duties . . . ."

7

between the county counselor and the county prosecutor. Rather, the county counselor in that case argued that its authority derived from the county's charter, which provided that "the County Counselor shall have . . . the authority to file an action in quo warranto." *City of O'Fallon*, 53 S.W.3d at 213. The Eastern District rejected the argument, finding that, regardless of the county's charter provision, "the Counselor was still required to comply with Rule 98.02 and Section 531.010,[5] which govern proceedings in Quo Warranto." *Id*. at 214.

The Missouri Constitution provides that "[t]he supreme court may establish rules relating to practice, procedure and pleading for all courts and administrative tribunals, which shall have the force and effect of law[,]" but "[t]he rules shall not change substantive rights." Mo. Const. art. V, § 5. Therefore, if there is an inconsistency on a substantive issue between a statute and a rule, the statute controls. On the other hand, if a rule is procedural in nature, it will control unless expressly modified by the legislature under limited circumstances discussed *infra*. Dykhouse argues that "The class of potential plaintiffs entitled to bring a Quo Warranto action is a substantive

---

[5] Section 531.010 provides:

> In case any person shall usurp, intrude into or unlawfully hold or execute any office or franchise, the attorney general of the state, or any circuit or prosecuting attorney of the county in which the action is commenced, shall exhibit to the circuit court, or other court having concurrent jurisdiction therewith in civil cases, an information in the nature of a quo warranto, at the relation of any person desiring to prosecute the same; and when such information has been filed and proceedings have been commenced, the same shall not be dismissed or discontinued without the consent of the person named therein as the relator; but such relator shall have the right to prosecute the same to final judgment, either by himself or by attorney; provided if the person named therein is a member or employee of the judicial branch of government, and the persons desiring to prosecute the proceeding include the majority of the circuit and associate circuit judges of the circuit in which that person is employed, the suit may proceed without the approval or participation of the attorney general or any prosecuting attorney, and for all purposes under this chapter, such judges shall be considered the "relator" and may file and prosecute such matter without costs as provided by section 531.050. If such information be filed or exhibited against any person who has usurped, intruded into or is unlawfully holding or executing the office of judge of any judicial circuit, then it shall be the duty of the attorney general of the state, or circuit or prosecuting attorney of the proper county, to exhibit such information to the circuit court of some county adjoining and outside of such judicial circuit, and nearest to the county in which the judge so offending shall reside.

The statute was declared unconstitutional, in part, in *State ex inf. Nixon v. Kinder*, 89 S.W.3d 454, 458 (Mo. banc 2002), insofar as it allowed "one circuit court [to] exercise such authority over another judge of an adjoining circuit."

8

right, not a procedural matter," and, therefore, § 56.640.3, which arguably expands those who may act as a relator to include a county counselor who has entered into a mutual cooperation agreement with a county prosecutor, controls. Thus, a threshold question we must answer before determining what effect, if any, § 56.640.3 has on Rule 98.02, is whether the Rule is procedural or substantive.

Though the parties discuss Rule 98.02 in terms of whether it provides Dykhouse with "standing" to seek quo warranto, the concept of "standing" differs slightly from the purpose of Rule 98.02. "Standing is a question of whether 'the parties seeking relief . . . have some personal interest at stake in the dispute.'" *State ex rel. Collector of Winchester v. Jamison*, 357 S.W.3d 589, 594 (Mo. banc 2012) (quoting *Ste. Genevieve Sch. Dist. R-II v. Bd. of Alderman of the City of Ste. Genevieve*, 66 S.W.3d 6, 10 (Mo. banc 2002)). But what Rule 98.02 provides to the named permissible relators is "not [a] personal interest in the proceedings," but rather "authority or qualification to sue." *Id*. at 595.

> Procedural law prescribes a method of enforcing rights or obtaining redress for their invasion; substantive law creates, defines and regulates rights; the distinction between substantive law and procedural law is that substantive law relates to the rights and duties giving rise to the cause of action, while procedural law is the machinery used for carrying on the suit.

*Id*. (quoting *Wilkes v. Mo. Highway and Transp. Comm'n*, 762 S.W.2d 27, 28 (Mo. banc 1988)). Rules "dealing merely 'with the *means* by which the parties may assert their underlying rights,' but not otherwise defining 'the *nature or the extent* of the underlying rights,' are procedural." *Id*. (quoting *State ex rel. K.C. v. Gant*, 661 S.W.2d 483, 485 (Mo. banc 1983)).

In *Jamison*, the Court had to determine whether a statute, § 71.675, which purported to preclude "cities and towns from serving as class representatives in suits to enforce or collect business license taxes imposed on telecommunications companies," was procedural or

substantive.[6]  *Id*. at 590, 594.  The respondent argued that § 71.675 was related to standing, which was a substantive issue.  *Id*. at 594.  But the Missouri Supreme Court disagreed, noting that "[w]hat section 71.675 purports to take from cities and towns . . . is not . . . their standing to sue but rather their right to do so as a representative of other cities and towns in suits against telecommunications companies."  *Id*. at 595.  The Court held that, "[a]s a statute governing the 'machinery [to be] used for carrying on the suit,' and prescribing the means by which cities and towns may assert their rights, [Missouri Supreme] Court[] precedent instructs that section 71.675 is procedural."  *Id*. (quoting *Wilkes*, 762 S.W.2d at 28) (internal citation omitted).

The same is true here.  When either the Attorney General or a prosecuting attorney acts ex officio to bring a quo warranto action, it is not to remedy a personal interest, but instead is done "by virtue of the power of his [or her] office" in order to "serve the public interest."  *City of Lake St. Louis v. City of O'Fallon*, 324 S.W.3d 756, 760 (Mo. banc 2010) (quoting *State ex inf. Graham v. Hurley*, 540 S.W.2d 20, 22 (Mo. banc 1976)).  In other words, the rule addresses "merely '. . . the *means* by which . . . underlying rights'" may be asserted, but it does not define "the *nature or the extent* of the underlying rights."  *Jamison*, 357 S.W.3d at 595 (quoting *Gant*, 661 S.W.2d at 485).  Thus, Rule 98.02's identification of permissible relators is procedural.

Simply characterizing a rule as procedural, however, does not insulate it from subsequent legislative action.  "The very constitutional provision giving th[e Missouri Supreme] Court the authority to establish procedural rules that have the force and effect of law also provides the legislature with a specific mechanism for modifying those rules by providing that '[a]ny rule may

---

[6] As in this case, *State ex rel. Collector of Winchester v. Jamison*, 357 S.W.3d 589, 594 (Mo. banc 2012) addressed the interplay between a statute and a rule.  Section 71.675 purported to preclude cities and towns from serving as class representatives in certain suits, while Rule 52.08 governed the requirements and qualifications for filing class actions, generally.  *Id*. at 591-92.  The question presented was whether the statute prevailed over the rule. *Id*. at 591.

be annulled or amended in whole or in part by a law limited to the purpose.'" *Id*. at 592 (quoting Mo. Const. art. V, § 5). "Although the legislature thereby is given the authority to annul or amend procedural rules created by the Court, '[t]he constitutional prescription of the manner in which the General Assembly must act is of pristine importance.'" *Id*. (quoting *Gant*, 661 S.W.2d at 485). "A law, to qualify as one limited to the purpose of amending or annulling a rule, must[: (1)] refer expressly to the rule and [(2)] be limited to the purpose of amending or annulling it." *Id*. (internal quotations omitted).

The 2014 version of Rule 98.02 became effective on January 1, 1994, thus predating the enactment of § 56.640.3 in 2003. But § 56.640 makes no mention of Rule 98.02 and is unquestionably broader in application than Rule 98.02, given that it permits county counselors to "prosecute or defend *any* civil action which the prosecuting attorney . . . is authorized . . . to prosecute or defend." § 56.640.3 (emphasis added). Thus, given that the legislature did not follow the constitutionally mandated steps to amend Rule 98.02 in enacting § 56.640.3, it is evident that altering the list of permissible relators in quo warranto actions was not the legislative intent behind § 56.640.3.[7] Accordingly, regardless of whether Dykhouse met his burden of establishing the existence of a mutual cooperation agreement under § 56.640.3, such an agreement would not have provided him with the authority to bring a quo warranto action in his own name.[8]

Though Dykhouse did not fall within Rule 98.02's list of proper relators at the time he filed his petition, the Rule has since been amended. On June 10, 2015, Rule 98.02 was amended to include county counselors in the list of approved relators for quo warranto actions, and the

---

[7] Additionally, the legislature did not amend § 531.010 to reflect any change in permissible relators in quo warranto actions when it enacted § 56.640.3, thus further evidencing its lack of intent to alter the procedures for filing such actions.

[8] Below, City argued that any mutual cooperation agreement executed under § 56.640.3 must be in writing. City has abandoned that argument on appeal, and our own research discloses no direct authority requiring a writing. That being said, however, it would seem that public policy, as articulated in Missouri's Sunshine Law, § 610.010 et seq., would favor such agreements being in writing so as to facilitate government transparency.

amended Rule became effective on January 1, 2016—after the judgment was entered below but before City filed its notice of appeal. Dykhouse argues that the amendment of the Rule simply clarifies the Court's intent that county counselors have the ability to seek quo warranto. We disagree.

Quo warranto proceedings, designed to protect the public interest, are an exercise of the police power of the state. *See State ex rel. Rouveyrol v. Donnelly*, 285 S.W.2d 669, 674 (Mo. banc 1956) (noting that the police power includes the power to enact laws promoting order and the general welfare of society). This power cannot be delegated to private persons, and "[a] person, official or private, can have no greater part in the exercise of the police power than is accorded him by law." *Id.*

Though amended Rule 98.02 would now allow Dykhouse, as County Counselor, to seek quo warranto in his own name, a relator in a quo warranto proceeding "must have that authority *before* he may proceed." *State ex rel. Schneider's Credit Jewelers v. Brackman*, 272 S.W.2d 289, 296 (Mo. banc 1954) (emphasis added). This is because the existence of a proper relator "is a jurisdictional requirement" in a quo warranto proceeding. *State ex inf. Joyce-Hayes v. Twenty-Second Judicial Circuit*, 864 S.W.2d 396, 399 (Mo. App. E.D. 1993). In other words, to invoke the jurisdiction of the circuit court to decide a quo warranto action, the relator filing the petition must have the authority to do so at the outset of the proceedings. *See Lee v. Jamison*, 338 S.W.3d 844, 846 (Mo. App. E.D. 2011) (holding that "[t]he lower court lacked jurisdiction to hear th[e] case because it was filed without proper authority.").

Contrary to Dykhouse's argument, the change in Rule 98.02 does not clarify a preexisting intent for county counselors to have the authority to bring quo warranto actions; rather, "this amendment is 'a significant factor' and highly persuasive that the prior law did ***not*** contemplate

that [county counselors] were parties to the proceedings." *Rouveyrol*, 285 S.W.2d at 677 (emphasis added) (quoting *State ex inf. Gentry v. Long-Bell Lumber Co.*, 12 S.W.2d 64, 80 (Mo. banc 1928)). "The specific provision of the amendment that" county counselors be allowed to serve as relator in a quo warranto action "is a legislative construction that the right did ***not*** exist under the law applicable to this case." *Id.* (emphasis added). "In interpreting [rules], we employ the same rules of construction that we use when interpreting statutes." *State ex rel. Office of Pub. Counsel v. Missouri Pub. Serv. Comm'n*, 301 S.W.3d 556, 565 (Mo. App. W.D. 2009).

In sum, because neither the applicable version of Rule 98.02 nor § 56.640.3 granted county counselors authority to seek quo warranto at the time Dykhouse filed his petition, the trial court's jurisdiction was never properly invoked, and this case should have been dismissed.

Point III is granted. The trial court's decision is reversed, and the matter is remanded with instructions to dismiss.

## B. Quo warranto does not lie to prevent an improper exercise of power lawfully possessed.

Although our resolution of City's third point fully disposes of the appeal, because county counselors are now authorized relators in quo warranto proceedings, we find it necessary to further address City's second point, wherein it contends that quo warranto does not lie under the facts of this case, as the issue may arise again.

Quo warranto proceedings are governed by § 531.010 and Rule 98. The statute and Rule provide for the remedy of ouster "[i]n case any person shall usurp, intrude into or unlawfully hold or execute any office or franchise." § 531.010. Dykhouse alleged that City, by taking steps to create a TIF, was "usurping to itself a power it [did] not possess," on the theory that City's existing "power to implement new TIF programs [was] removed by operation of state law, pursuant to RSMo § 99.865." In other words, Dykhouse argues that the penalty provided by § 99.865.7 is

self-executing and automatically applied to remove City's authority to implement new TIF programs for a period of at least five years, upon its failure to comply with the reporting obligations imposed in § 99.865.

Accepting—without deciding—the validity of the alleged reporting violations, there are still two flaws with Dykhouse's theory:   first, the penalty provision of § 99.865.7 is not self-executing; and second, quo warranto lies to correct only a usurpation of authority where none is granted—it does not lie to correct the unlawful exercise of existing authority.

To begin, a "provision . . . is self-executing if it supplies a sufficient rule by means of which the . . . duty which it imposes may be enforced, without the aid of" additional legislation or intervention.  *State ex rel. City of Fulton v. Smith*, 194 S.W.2d 302, 304 (Mo. banc 1946) (quoting 11 Am. Jur. *Constitutional Law*, § 74, at 691, 692).  In other words, a "provision is self-executing if there is nothing to be done . . . to put it in operation."  *Id*. (quoting 11 Am. Jur. *Constitutional Law*, § 74, at 691, 692).

An example of a self-executing provision properly subject to a quo warranto action is the constitutional prohibition on nepotism found in Article VII, § 6 of the Missouri Constitution:

> Any public officer or employee in this state who by virtue of his office or employment names or appoints to public office or employment any relative within the fourth degree, by consanguinity or affinity, shall thereby forfeit his office or employment.

Under this provision, a public officer "forfeits by the act forbidden, and therefore his act results in a status"—that of interloper.  *State ex inf. Norman v. Ellis*, 28 S.W.2d 363, 366 (Mo. banc 1930).  When a provision is self-executing, "quo warranto is an appropriate remedy for enforcing a resulting forfeiture."  *State ex rel. Nixon v. Belt*, 873 S.W.2d 644, 646 (Mo. App. W.D. 1994).

Here, however, § 99.865.7 is not self-executing.  Even if a municipality fails to comply with the reporting requirements, it does not automatically acquire the status of interloper.  This can

14

be seen in the plain language of § 99.865.7. The statute provides that "[a]ny municipality which fails to comply with the reporting requirements . . . *shall be prohibited* from implementing any new tax increment finance project for a period of *no less than five years* from such municipality's failure to comply." (Emphasis added.) Unlike the active voice used in Article VII, § 6, of the Missouri Constitution indicating that a public officer "forfeits" his or her office by certain acts, § 99.865.7 uses passive voice ("shall be prohibited"), indicating that an outside force must act upon a municipality before the power to implement new TIF projects is removed. Furthermore, the nepotism provision provides a clear and automatic result—forfeiture of office. The penalty provision in § 99.865.7 is not as clear, as it provides only a *minimum* amount of time during which a municipality is to be precluded from implementing TIF projects; it does not indicate the ultimate duration of any resulting ban. For an answer to that question, judicial intervention is obviously required.

The second flaw in Dykhouse's argument is that he is seeking quo warranto in response to City's alleged error (noncompliance with statutory reporting requirements) in its exercise of a power lawfully possessed (the power to implement TIF projects). "The writ of quo warranto is not a substitute for mandamus or injunction nor for an appeal or writ of error." *State ex inf. McKittrick v. Murphy*, 148 S.W.2d 527, 530 (Mo. banc 1941). "It is not to be used to prevent an improper exercise of power lawfully possessed." *Id*. Rather, "[i]ts purpose is solely to prevent an officer or corporation or persons purporting to act as such from usurping a power which they do not have."[9] *Id*.

---

[9] Though City's alleged noncompliance with the reporting requirements could potentially result in a temporary loss of the power to implement new TIF projects, as noted above, the penalty provision is not self-executing. Thus, there must be a determination by an outside force (either through the court by a declaratory judgment or writ of mandamus or through a finding of noncompliance by the agency responsible for receiving the reports) that City has failed to comply before there can be any removal of the existing power.

15

We find this case similar to *State ex inf. Nixon v. Kinder*, 89 S.W.3d 454 (Mo. banc 2002). In *Kinder*, the Attorney General filed a petition in quo warranto against two circuit judges, seeking to oust them "from continuing to exercise supervisory authority over four receivership funds held in the registry of the Circuit Court . . . , and to instead pay the money in those funds over to the state treasurer." *Id.* at 456. The Attorney General argued that the "judges no longer ha[d] authority over the remaining funds because sections 447.539 and 447.543, RSMo 2000, . . . require[d] the judges to report and pay over any remaining amounts to the state treasurer once the funds had been in existence for five years." *Id.* In other words, the Attorney General alleged that the judges, by operation of statute, lost the authority they once possessed over the funds, and, by continuing to exercise authority over the funds, the judges were unlawfully exercising a power they did not have. The Missouri Supreme Court rejected the Attorney General's argument on the ground that "[q]uo warranto is available only where it is alleged that an official has exercised a power he or she does not have, not where, as here, it is alleged that the official exercised an existing power wrongly or for too long of a period." *Id.*

Here, it is beyond question that City had the power to consider and implement TIF projects by virtue of the TIF Act. The heart of Dykhouse's petition is that City exercised that power improperly by failing to comply with various reporting requirements laid out in § 99.865. But, as was held in both *McKittrick* and *Kinder*, the wrongful exercise of an existing power is simply not an appropriate matter for quo warranto proceedings.

Point II is granted. The judgment is reversed, and the matter is remanded with directions to dismiss.

**Conclusion**

Because county counselors were not authorized relators at the time Dykhouse filed his petition, he failed to invoke the trial court's jurisdiction over the quo warranto action, and it should have been dismissed. Furthermore, the basis for Dykhouse's petition—City's allegedly improper exercise of its TIF power—does not support a quo warranto proceeding. Accordingly, we reverse the judgment of ouster and remand the matter with directions to dismiss the action.

_____
Karen King Mitchell, Judge

Lisa White Hardwick, Presiding Judge, and
Anthony Rex Gabbert, Judge, concur.

17