

# Missouri Court of Appeals

### Southern District

### Division One

STATE OF MISSOURI ex rel.
DAN PATTERSON, GREENE COUNTY
PROSECUTING ATTORNEY,

          Relator,

    vs.

THE HONORABLE CALVIN HOLDEN,
THIRTY-FIRST JUDICIAL CIRCUIT,
GREENE COUNTY, MISSOURI,

          Respondent.

No. SD35998
Filed: September 17, 2019

ORIGINAL PROCEEDING IN PROHIBITION

## **PRELIMINARY WRIT MADE PERMANENT**

Dan Patterson, Greene County Prosecutor ("Relator"), filed a "Petition for Writ of Prohibition" asking this Court to direct The Honorable Calvin Holden ("Respondent") to cease ordering defendants placed in his "Domestic Abuse Court" ("DAC") as a special condition of probation, to cease operation of the DAC, and to cease conducting "Domestic Abuse Court Team" "staffings" in cases before the DAC. We granted a preliminary writ of prohibition, and now make that writ permanent.

## Factual and Procedural History

Relator asserts that the bases for this writ of prohibition center on Respondent's unauthorized creation and operation of a treatment court division—Respondent's DAC—not established by the 31st Judicial Circuit Court (the "31st Judicial Circuit"), as required by chapter 478, and under circumstances in which the 31st Judicial Circuit had designated other judges (and not Respondent) to preside over its treatment court divisions.

### *Facts*

In a prohibition proceeding, "[t]he reviewing court is limited to the record made in the court below[,]"[1] and to admissions from respondent's answer to relator's petition.[2] We recite such material as made pertinent by this standard.

> •Respondent sentenced defendants in twenty-six cases, placing each defendant on probation with the following special condition: "Defendant is placed in DAC and is ordered to follow all directives/recommendations of TC staff and Probation Officer." "'TC staff' means treatment court staff." "The defendants placed in 'DAC' are required to appear before Respondent from time to time as part of a special condition of probation placing the defendant[s] in the 'DAC.'"

> •In the case of *State v. Jackson Holt-Allen*, Case No. 1831-CR03398-01, Respondent approved a plea agreement wherein one condition of probation was that defendant "complete treatment court in Greene County"; Respondent sentenced defendant, without rejecting the plea agreement, and as a special condition of probation required that defendant be "placed in DAC and is ordered to follow all directives/recommendations of TC staff and Probation Officer."

> •DAC is not a treatment court authorized by Local Rule 77 of the 31st Judicial Circuit.

> •"Respondent has not been assigned to or designated as a treatment court program or treatment court division by the Presiding Judge or by the Court en banc."

> •Respondent "is not a judge that a majority of the judices [sic] of the 31st Judicial Circuit designated under § 478.003.1 to hear cases arising in the circuit subject to the provisions of §§ 478.001 through 478.009."

---

[1] *State ex rel. Chance v. Sweeney*, 70 S.W.3d 664, 668 (Mo.App. S.D. 2002) (internal quotation and citation omitted).

[2] *See State ex rel. Harmon v. Scott*, 820 S.W.2d 101, 101 (Mo.App. S.D. 1991).

•"Respondent, as judge of Division V of the 31st Judicial Circuit, created DAC[.]"

•"[T]he 31st Judicial Circuit has not established conditions for referral of proceedings from each Division to the DAC under § 478.005."

•"Respondent . . . appointed his daughter . . . as a member of the 'Domestic Abuse Court Team.'" Other members of "the 'Domestic Abuse Court Team'" "are not court staff or court officials." "Missouri Supreme Court Rule 2-2.13[A] provides, [] 'In making administrative appointments, a judge: (1) shall exercise the power of appointment impartially and on the basis of merit; and (2) shall avoid nepotism, favoritism, and unnecessary appointments.'"

Prior to December 18, 2018, the 31st Judicial Circuit established several treatment court divisions, generally referred to as "drug court" or "treatment court," pursuant to chapter 478. Local Rule 1.3 (Oct. 2017),[3] provided in relevant part: "The Court en banc shall designate the division or divisions of the Circuit Court, or Associate Circuit Court, that shall be the Drug Court Division(s)." Local Rule 77 (Oct. 2017), further provided:

> [A.] The Court en banc has established a Drug Court pursuant to §§ 478.001 - 478.009 RSMo and Court Operating Rule 26. The Drug Court shall be divided into individual Treatment Court Programs. Treatment Court Programs may from time-to-time be added or discontinued based on an evaluation of the effectiveness of the program and upon approval by the Court en banc.
>
> B.     The Drug Court includes the following Treatment Court Programs:
>
> TC 1   Criminal Drug Court
> TC 2   [discontinued]
> TC 3   Mental Health Court

---

[3] *See State ex rel. Hillman v. Beger*, 566 S.W.3d 600, 607 n.8 (Mo. banc 2019):

> It has been suggested that this Court is bound to apply the version of section 217.703.7 that became effective August 28, 2018, in deciding this case and, therefore, that it is the statute that was enacted later in time. This misperceives the nature of these proceedings. The Court is not ruling directly on the motions for discharge filed by Pallai and Long. Instead, the Court is ruling on two petitions for writs of prohibition in which the only issue is whether one or both Respondents exceeded their authority. **It would be improper for this Court to resolve a petition for extraordinary writ on a ground that was never presented to or passed on by the circuit court**. . . . That said, **the Court may take notice of the 2018 amendment to section 217.703.7 insofar as it sheds light on the proper resolution of the conflict between sections 217.703.7 and 559.105.2**[.]

(internal quotation and citation omitted) (emphasis added). In this opinion, we treat applicable authority consistent with *Hillman*'s guidance, and without further attribution.

3

TC 4   DWI Court
TC 5   Family Dependency Treatment Court
TC 6   [discontinued]
TC 7   Veteran's Treatment Court

Effective December 18, 2018, the Missouri legislature amended sections 478.001 to 478.009, replacing the heading "drug courts" with "adult treatment courts," brought mental health courts handling co-occurring disorders under the adult treatment court umbrella, and placed adult treatment courts, DWI courts, family treatment courts, juvenile treatment courts, and veterans courts within treatment court divisions. In April 2019, the 31st Judicial Circuit amended its local rules consistent with the changes to sections 478.001 to 478.009. Local Rule 1.3 (April 2019) now provides, in relevant part: "The Court en banc shall designate the division or divisions of Treatment Court." Likewise, Local Rule 77 was amended consistent with the changes to sections 478.001 to 478.009, RSMo Cum.Supp. 2019:

> The Court en banc has established a Treatment Court pursuant to §§ 478.00 - 478.009 RSMo. and Court Operating Rule 26. The Treatment Court shall be separated into individual treatment court divisions. Treatment court divisions may from time-to-time be added or discontinued based on an evaluation of the effectiveness of the program, compliance with current law and best practices, the standards and practices established by the Treatment Court Coordinating Commission, and upon approval by the Court en banc.
>
> A.   The Treatment Court includes the following treatment court divisions:
>
> TC 1   Adult Treatment Court
>      [The Adult Treatment Court division may include participants with a mental health disorder as a co-occurring disorder.]
> TC 2   [discontinued]
> TC 3   [discontinued]
> TC 4   DWI Court
> TC 5   Family Treatment Court
> TC 6   [discontinued]
> TC 7   Veterans Treatment Court

[The Veterans Treatment Court division may include participants with a mental health disorder as a co-occurring disorder.]

    B.    A **majority of the judges of the circuit court** will from time-to-time designate one or more judges and/or a treatment court commissioner to preside over each division of the Treatment Court.

(Emphasis added).

Respondent required defendants he placed in DAC to appear before him as part of those defendants' special conditions of probation. Respondent created a so-called "Thirty-First Judicial Circuit Domestic Abuse Court Program, Policy and Procedure" (the "DAC Manual") that describes "staffings"—*i.e.*, "meetings just prior to court, where the team discusses each participant who will appear in court." The DAC Manual provides that "status hearings are regularly scheduled progress hearing[s] where the participants appear in front of the Judge to go over everything that was discussed in the staffing prior to court." DAC "decisions are made by a team consensus[.]"

In a recent case, Respondent sentenced a defendant convicted of DWI to be placed in the 31st Judicial Circuit's DWI court *and* Respondent's DAC, but Respondent's sentence directed only that defendant appear before Respondent in his DAC. This confused and duplicative allocation of judicial efforts ultimately led the DWI court judge to make the following docket entry:

> Deft will not be accepted in TC(4) nor supervised by TC(4) Judge because 'duel TC4/DAC' referenced in Judge Holden's docket entry of 01/24/2019 does not exist. Deft was never admitted to TC(4) because he never appeared for TC(4). TC case number to be administratively closed. Copy of this entry to Judge Holden and Presiding Judge Cordonnier.

### *Procedural History*

On February 11, 2019, Relator directed correspondence to The Honorable Michael Cordonnier ("Judge Cordonnier"), Presiding Judge of the Circuit Court, requesting, in part, that the "Court en banc" address the issue of Judge Holden's sentencing individuals to his DAC "as if

5

it is a treatment court," and other issues related thereto. Relator further requested that Judge Cordonnier, in his:

> administrative capacity, or that the Court en banc, direct Division V to act in accordance with Missouri Law, Missouri Supreme Court Rules, and Greene County Circuit Court Local Rules, to cease referring to the 'DAC' as a treatment court or 'court' and to cease the conduct of out-of-court 'staffings' in which factual material outside of the record is considered by the Court.

On March 7, 2019, Relator also filed a petition for writ of prohibition and suggestions in support in the Circuit Court in case number 1931-CC00313, pursuant to Rule 84.22(a).[4] Relator's petition was denied on March 8, 2019.

On March 11, 2019, Relator filed with this Court a "Writ Summary," "Petition for Writ of Prohibition," suggestions in support, and exhibits.

> This Court issued a "Stop Order" on March 12, 2019, directing Respondent to
>
> refrain from conducting a 'Domestic Abuse Court' hearing or staffing in said cases until further order of this Court. Additionally, the Court directs that Respondent shall have until **March 19, 2019**, to demonstrate to this court that a treatment court denominated 'Domestic Abuse Court' has been established by the Thirty-First Judicial Circuit Court under sections 478.001 to 478.009 and that such establishment has not been rescinded or otherwise terminated by that court.

On March 18, 2019, Respondent was granted an extension of time until March 26, 2019, to file a response to Relator's Petition for Writ of Prohibition.

On March 20, 2019, Respondent filed a "Motion to Reconsider Stop Order," which this Court denied.

On March 21, 2019, Respondent filed a response to this Court's March 12, 2019 Stop Order. After reviewing Respondent's response to the Stop Order, this Court issued a "Preliminary

---

[4] Rule 84.22(a) states: "No original remedial writ shall be issued by an appellate court in any case wherein adequate relief can be afforded by an appeal or by application of such writ to a lower court."

All rule references are to Missouri Court Rules (2019), unless otherwise indicated.

Writ of Prohibition" finding that Respondent failed to "demonstrate to this court that the 'DAC' has been established by the Thirty-First Judicial Circuit Court under sections 478.001 to 478.009 and that such establishment has not been rescinded or otherwise terminated by that court." This Court directed Respondent to file an

> answer to relator's petition on or before **April 24, 2019**. Thereafter, briefing shall proceed in accordance with Rule 84.24(h). You are further directed to cease ordering defendants to be placed in the 'Domestic Abuse Court' ('DAC') as a special condition of probation, cease operation of the 'DAC,' and cease conducting 'Domestic Abuse Team' staffings in cases in which Respondent has placed a defendant in the 'DAC' as a special condition of probation until you demonstrate to this court that the DAC has been established by the 31st Circuit in compliance with the applicable sections of 478.001 to 478.009 and its local rules governing the establishment of particular treatment courts and that you have been designated by a majority of the judges of the 31st Circuit, in compliance with all requirements of section 478.003, to preside over the cases assigned to that treatment court.

> On April 23, 2019, Respondent filed his "Answer to Petition for Writ of Prohibition." The

parties submitted briefs. In a single point, Relator asserts:

> **Relator is entitled to an order prohibiting Respondent, the Honorable Calvin Holden, (a) from ordering defendants to be placed in the "Domestic Abuse Court" ("DAC") as a special condition of probation, (b) from operating the "DAC," and (c) from conducting "Domestic Abuse Team" staffings in cases in which Respondent has placed a defendant in the "DAC" as a special condition of probation, because Respondent has acted in excess of his jurisdiction and authority and abused his discretion by establishing and operating the "DAC" as a treatment court in that the "DAC" is not a treatment court that was established by the 31st Judicial Circuit Court pursuant to sections 478.001 to 478.009, RSMo, and in that the 31st Judicial Circuit Court has, pursuant to section 478.003, RSMo, designated judges other than Respondent to hear cases arising in the circuit subject to the provisions of sections 478.001 to 478.009, RSMo.**

**Analysis**

***Relator Has Standing***

Respondent challenges that "Relator, a county prosecutor, lacks standing to challenge conditions of probation that defendants received from Respondent." In support, Respondent

argues that "once a defendant is sentenced and then granted probation, the State no longer has a legally cognizable interest[.]"

Standing refers to a "legally protectable interest[.]" ***Schweitzer's v. Nixon***, 408 S.W.3d 769, 773 (Mo. banc 2013). Section 478.001.1(13), RSMo Cum.Supp. 2019 indicates that a "[t]reatment court team" is to include the "prosecutor." The DAC Manual does not include the prosecutor as part of its "team." Nevertheless, it purports to otherwise direct participation by the prosecutor before, during, and after a defendant's placement in Respondent's DAC.[5] As applicable here, these facts confer standing on Relator to bring the instant petition for writ of prohibition.[6]

### *Respondent's DAC Program*

Relator's petition for writ of prohibition requested that this Court order Respondent to "cease ordering defendants to be placed in the 'DAC' as a special condition of probation[]"; "cease operation of the 'DAC'"; and "cease conducting 'Domestic Abuse Court Team' staffings in cases

---

[5] Respondent's DAC Manual states, in part:

> Both the prosecution and defense counsel strive to shed their adversarial courtroom relationship; preserve the responsibilities of upholding public safety along with protecting the due process of the participant; and maintain focus on the participant's recovery process and law-abiding behavior. The prosecution and defense counsel work together to determine the actions taken during the course of the individual's participation in the program. Before and during the individual's participation in the Domestic Abuse Court program, the prosecution and defense counsel help the participant understand the Domestic Abuse Court philosophy, the programs [sic] rules and requirements, and any other options available to the individual. It is a goal of the Domestic Abuse Court to obtain more involvement from both the prosecution and defense counsel.

[6] *See **State v. Townsel***, 564 S.W.3d 731, 741 n.6 (Mo.App. W.D. 2018) ("[W]e note that, because [the defendant] was on probation in Clay County, the prosecutor qualified as an 'other person having a proper interest' in [the defendant's] probation violation reports under Section 559.125.2."); ***State ex inf. Dykhouse v. City of Columbia***, 509 S.W.3d 140, 148 (Mo.App. W.D. 2017) (with respect to a prosecutor acting in his or her official capacity, the threshold consideration is not directed at whether the underlying action can "remedy a personal interest," but more properly centers on whether the action "is done by virtue of the power of his or her office in order to serve the public interest.") (internal quotation and citation omitted); ***State ex rel. Crist v. Nationwide Fin. Corp. of Missouri***, 588 S.W.2d 8, 13 (Mo.App. E.D. 1979) (recognizing standing for public officers demonstrating "sufficient special interest by . . . desire to prevent a violation of a law which [that public officer] is entrusted to enforce."); *cf. **In re Schuessler***, Nos. SC97376 and SC97377, 2019 WL 3796159, at *8 (Mo. banc Aug. 13, 2019) ("The prosecutor is an officer of the state who should have no private interest in the prosecution and who is charged with seeing that the criminal laws of the state are honestly and impartially administered, unprejudiced by any motives of private gain.").

in which Respondent has placed a defendant in the 'DAC' as a special condition of probation[.]" Relator contends that neither Respondent's Division V nor Respondent's DAC are authorized chapter 478 treatment courts, in that: (1) neither has been established by the 31st Judicial Circuit as a treatment court division pursuant to section 478.001(12); (2) Respondent is not a judge denominated by a majority of the judges of the 31st Judicial Circuit to hear cases arising out of the provisions of sections 478.001 to 478.009; (3) the 31st Judicial Circuit has not established conditions for referral of proceedings to the DAC, pursuant to section 478.005; and (4) the judges of the 31st Judicial Circuit have not designated Respondent's Division V or Respondent's DAC a treatment court, pursuant to Local Rules 1.3 and 77.

Circuit courts have "original jurisdiction over all cases and matters, civil and criminal." MO CONST. art. V, § 14 (1976); *see **J.C.W. ex rel. Webb v. Wyciskalla**,* 275 S.W.3d 249, 253 (Mo. banc 2009). Nevertheless, when a circuit court "**establishes and uses a [treatment] court, it is exercising a special statutory power.**[7] In doing so, it is **confined strictly to the authority given by the [authorizing] statute[,]**"[8] as well as the restrictions imposed by Missouri Court Rules, local rules, governing case law, and regulatory provisions. This is significant, at least in part, because judges operating treatment court divisions "are authorized by court rules to act in nontraditional ways," and "may be authorized and even encouraged to communicate directly with [persons and entities] outside the context of their usual judicial role as independent decision

---

[7] *See **Graham v. Florida**,* 560 U.S. 48, 73-74, 130 S.Ct. 2011, 2029, 176 L.Ed.2d 825 (2010) ("[R]ehabilitation [is] a penological goal that forms the basis of parole systems. The concept of rehabilitation is imprecise; and its utility and proper implementation are the subject of a substantial, dynamic field of inquiry and dialogue. **It is for legislatures to determine what rehabilitative techniques are appropriate and effective**.") (emphasis added).

[8] **State ex rel. Moore v. Sharp**, 151 S.W.3d 104, 110 (Mo.App. S.D. 2004) (emphasis added); *see* 19 Mo. Prac., Criminal Practice and Procedure, § 1:9 (3rd ed.) (treatment courts "are **authorized by statute** and exist in many counties.") (Emphasis added).

9

makers on issues of fact and law." Rule 2, "Application," cmt. 2.[9] Respondent concedes his DAC

is operating in the guise of a statutorily created treatment court division, pursuant to chapter 478.[10]

> A "**Treatment court division**," (*i.e.*, a treatment court) is
>
> a specialized, nonadversarial court division with jurisdiction over cases involving substance-involved offenders and making extensive use of comprehensive supervision, drug or alcohol testing, and treatment services. Treatment court divisions include, but are not limited to, the following specialized courts: adult treatment court, DWI court, family treatment court, juvenile treatment court, veterans treatment court, or any combination thereof.

§ 478.001(12), RSMo Cum.Supp. 2018.

The legislature designates that treatment court divisions are established by a "circuit court,"[11] and provides the mechanism by which a circuit court creates a treatment court division: "In any judicial circuit of this state, a **majority of the judges of the circuit court may designate a judge** to hear cases arising in the circuit subject to the provisions of sections 478.001 to 478.009." § 478.003.1, RSMo Cum.Supp. 2018. (Emphasis added). The legislature also directs the manner of operation for each treatment court division created by such judicial circuit: "Each circuit court shall establish conditions for referral of proceedings to the treatment court division." § 478.005.1, RSMo Cum.Supp. 2018.

---

[9] These are not *de minimus* concerns, ***particularly*** for a judge seeking to establish and operate a treatment court division. *See* Rule 2-2.10, cmt. 1 ("The restrictions on judicial speech by this Rule 2-2.10 are essential to the maintenance of the independence, fairness, integrity, and impartiality of the judiciary.").

[10] Respondent's answer to Relator's petition for writ of prohibition made the following admissions relevant to this issue: (1) "Respondent denies that DAC is not a Treatment Court Division as defined by § 478.001(12)[]"; (2) "Respondent denies that DAC is not a treatment court created by the 31st Judicial Circuit under RSMo. §§ 478.001 through 478.009"[]; and (3) "[Sections] 478.001.1 and 478.001.2, which were in effect when DAC court was established in March of 2018, permitted Respondent to establish such treatment courts." At oral argument, Respondent's counsel was asked whether Respondent was contending that DAC was "a statutorily created treatment court," and counsel responded that DAC "meets all of the factors that 478 sets out"; counsel for Respondent also conceded that DAC "meets the definitional requirement of an adult treatment court under section 478.001."

[11] Section 478.001.2, RSMo Cum.Supp. 2018.

As relevant here, the 31st Judicial Circuit adopted Rules 1.3 and 77, which govern the creation and operation of treatment courts. Rule 1.3 indicates that "[t]he Court en banc shall designate the division or divisions" of treatment courts. Rule 77 recites the treatment courts created by the 31st Judicial Circuit, and the divisions assigned to those courts. The 2019 amendment of Rule 77 also advises that "[a] majority of the judges of the circuit court will from time-to-time designate one or more judges and/or a treatment court commissioner to preside over each division of the Treatment Court."

The record does not reflect that Respondent, his Division V, or his DAC were ever designated a treatment court division, pursuant to Local Rules 1.3 or 77, and similarly does not reflect that a majority of the judges of the 31st Judicial Circuit designated Respondent "to hear cases arising in the circuit court subject to the provisions of sections 478.001 to 478.009[,]" as section 478.003.1, RSMo Cum.Supp. 2018 requires. Indeed, Respondent admits this, and represents that *he* (not the 31st Judicial Circuit) "started DAC on March 9, 2018[.]"

Respondent attempts two arguments as to why we should allow this program to continue: (1) that Respondent's DAC is not, and was never intended to be, a chapter 478 treatment court, and that Respondent's probation authority allows him to create his own treatment court outside of chapter 478 and local rules; (2) that the DAC is "a statutorily created treatment court," and that the DAC "meets all of the factors that [chapter] 478 sets out." Both arguments are without merit.

Respondent's first argument strikes a somewhat disingenuous chord. We observe that section 478.005.1, RSMo Cum.Supp. 1998 directs that referrals be made in accord with a unitary circuit court system: "Each circuit court shall establish conditions for referral of proceedings" to the treatment court. Respondent did not designate his DAC as a "Division V Domestic Abuse Court Program," or "A Thirty-First Judicial Circuit Domestic Abuse Court Program," or even

11

"Judge Holden's Domestic Abuse Court Program" (as he, persuaded by the merits of his first argument, would presumably have done); instead, he designated it "***Thirty-First Judicial Circuit*** Domestic Abuse Court Program," belying simultaneous recognition and disregard of section 478.005.

We are also compelled to note section 478.003.1, RSMo Cum.Supp. 2018, which in relevant part states: "In any judicial circuit of this state, a majority of the judges of the circuit court may designate a judge to hear cases arising in the circuit subject to the provisions of sections 478.001 to 478.009." Seemingly, in light thereof, the DAC Manual explicitly represents that "***[t]he Thirty-First Judicial Circuit Court agrees to provide a Judge who will preside over the Domestic Abuse Court Programs***." The record is devoid of evidence that the 31st Judicial Circuit ever agreed to provide a judge for such "Domestic Abuse Court Programs," much less that Respondent, Division V, or his DAC were so designated by the 31st Judicial Circuit—in fact, Respondent admits these things never occurred. Again, the presence of such content in the DAC Manual signals Respondent's implicit acknowledgement that his DAC was governed by chapter 478.

Regardless, both of Respondent's arguments wholly fail to account for ***State ex rel. Moore v. Sharp***, 151 S.W.3d 104, 110 (Mo.App. S.D. 2004), wherein this Court held that when a circuit court "**establishes and uses a [treatment] court, it is exercising a special statutory power. In doing so, it is confined strictly to the authority given by the [authorizing] statute**."[12]

---

[12] *See **State ex rel. Missouri Pac. Ry. Co. v. Williams***, 221 Mo. 227, 120 S.W. 740, 752 (1909) (Lamm, J., concurring in part and dissenting in part) ("[W]hat a state court may not seize with power, directly, it may not take in a roundabout way by 'inching' over on the edges, or getting the same result by indirection."); *cf.* ***State ex rel. Henderson v. Boone County Court***, 50 Mo. 317, 321 (Mo. 1872) ("No person on his own motion has the power to erect himself into a court. . . . Can the office of judge of a court be assumed where there is no such office and no such court in existence? . . . Can there be such a thing as a *de facto* court where there is a rightful government?").

In other words, Respondent's DAC is governed by the authorizing provisions of chapter 478, and Local Rules 1.3 and 77, but wholly fails to comply with them.[13]

Our preliminary writ of prohibition is made permanent.

WILLIAM W. FRANCIS, JR., J. - OPINION AUTHOR

GARY W. LYNCH, P.J. - CONCURS

NANCY STEFFEN RAHMEYER, J. - CONCURS

---

[13] Respondent suggests that his DAC is nevertheless authorized by: (1) section 559.100, which provides that "[t]he circuit court shall determine **any conditions of probation** or parole for the defendant that it deems necessary to ensure the successful completion of the probation or parole term, including the extension of any term of supervision for any person while on probation or parole"; (2) section 559.021.1, which provides that "[t]he conditions of probation shall be such as the court in its discretion deems reasonably necessary to ensure that the defendant will not again violate the law[]"; and (3) section 559.021.2(3), which provides that "the court may order such conditions as the court believes will serve to compensate the victim, . . . includ[ing] restorative justice methods pursuant to section 217.777, **or any other method that the court finds just or appropriate including, but not limited to:** . . . [o]ffender treatment programs." (Bolding in original).

We are not at all persuaded that (as Respondent effectively argues) the legislature intended on the one hand to create a *specific* mechanism by which treatment courts could be created, and *specific* requirements for their operation (pursuant to sections 479.001-.009), and yet on the other hand also intended to nullify those same *specific* mechanisms and requirements with *general* language in sections 559.100 and 559.021. See *Dieser v. St. Anthony's Medical Center*, 498 S.W.3d 419, 431 n.5 (Mo. banc 2018) ("[i]t is a well-settled principle of statutory interpretation [] that where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment.") (internal quotation and citation omitted).

13